### HARDEE et al. v. AMERICAN SECURITY & TRUST CO.

No. 6282.

United States Court of Appeals for the District of Columbia.

Argued Feb. 6, 1935.

Decided April 1, 1935.

Huston Thompson, Herbert S. Ward, George P. Barse, and J. F. Anderson, all of Washington, D. C., for appellants.

Frederic D. McKenney, John S. Flannery, and G. Bowdoin Craighill, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and HITZ and GRONER, Associate Justices.

MARTIN, Chief Justice.

This appeal relates to certain claims asserted by a mortgagee to the rents collected from the mortgaged premises by a receiver appointed by the Comptroller of the Currency for an insolvent bank. The controlling facts are stipulated by the parties.

On December 12, 1927, the American Security & Trust Company, plaintiff below, and hereinafter called the plaintiff, loaned to Leslie E. F. Prince the sum of $125,000 for which amount Prince signed and delivered to plaintiff his promissory notes of various denominations, due three years after date, secured by a first deed of trust upon a large apartment house located at 2900 Fourteenth Street N. W., in the city of Washington., D. C.

On November 1, 1930, the property, subject to the deed of trust, was acquired by the Federal American National Bank & Trust Company, hereinafter called the bank, which thereafter collected the rents from the property, and after paying the operating expenses and taxes reduced the principal of the debt to $110,000, and paid the interest thereon up to December 31, 1932. In the meantime the trust notes were extended and made payable on September 12, 1933.

On March 6, 1933, the bank was closed by the Presidential proclamation. It was then found to be insolvent, and was never reopened.

On March 14, 1933, John Poole was appointed conservator of the bank, and on November 1, of the same year, the appellant, Cary A. Hardee was appointed receiver by the Comptroller of the Currency, and they successively took possession of the bank's assets, including the mortgaged apartment house. The receiver then held possession of the property until January 30, 1934, and collected rents from it in the net sum of $5,262.27. These funds were deposited with the Treasurer of the United States, subject to the order of the Comptroller, and so remain. During this period the receiver made no payment upon either the principal or interest of plaintiff's lien nor any payment of taxes upon the property. The unpaid taxes accrued during the receiver's possession amounted to $2,273.16.

On or about December 16, 1933, the plaintiff made various demands, oral and written, to have the rents applied in payment of the taxes and the interest on the first trust notes. These demands were made first upon the conservator and then upon the receiver, but no payments were made such as were demanded by plaintiff. The present suit was then filed by plaintiff, and a rule was issued against the receiver and Comptroller of the Currency to show cause why a receiver should not be appointed to take possession of the property and collect the rents and apply them to the payment of taxes and interest, and why the rents theretofore collected by the receiver should not likewise be so applied. The receiver, Hardee, thereupon filed a motion to dismiss the bill and discharge the rule.

Nevertheless on January 30, 1934, plaintiff, without objection from the receiver or Comptroller, caused the property to be sold by the trustees under the first deed of trust. The property was purchased by plaintiff at this sale for the sum of $85,000, leaving a deficiency owing to plaintiff in the sum of $35,000 because of the amount remaining due and unpaid upon the trust notes and of the unpaid taxes remaining due upon the property which the plaintiff as purchaser at the same was compelled to pay.

Plaintiff thereupon filed an amended and supplemental bill setting forth the foregoing facts and alleging that under the first deed of trust the debtor, Prince, owner of the property to whose title and legal responsibility the bank and the receiver in turn had succeeded had agreed in the trust deed to pay the notes and taxes when due, and that the owner should receive the rents until default, but upon default the trustees should sell the property and apply the proceeds in satisfaction of the debt, taxes, and other expenses; that the first default occurred in March, 1933, when the property was already in the possession of the con-

servator, and plaintiff claimed that after such default plaintiff was entitled to have the rents applied on the overdue taxes and interest, and plaintiff demanded that the conservator and receiver should so apply them. Plaintiff averred that it had a preferred lien in equity upon the net rents superior to the claims of general creditors of the insolvent bank; that it would be inequitable and unjust to permit the receiver to retain the rents for the benefit of the general creditors and not pay the accrued interest on the first trust and not reimburse plaintiff for the overdue taxes which plaintiff was compelled to pay, and had paid, after it had purchased the property at the trustees' sale on January 30, 1934.

It was claimed, on the other hand, by the receiver and the Comptroller of the Currency that it was the duty of the receiver of an insolvent national bank to pay dividends ratably to all creditors establishing claims, citing section 5236, Rev. St., section 194, tit: 12, USCA; that the court had no general advisory directing power over the liquidation of an insolvent national bank; that the mortgagor in possession was entitled to take the rents, issues, and profits to his own use without liability to account to the mortgagee for them; that the mortgagor was entitled to take such rents free from any lien or claim thereon; and that the creditors of the mortgagor in possession are entitled to the rents accruing during his possession. The defendants therefore denied the claim of the plaintiff respecting both the taxes and rents.

Upon these issues the trial court decreed that the receiver and the Comptroller should pay to the plaintiff the sum of $5,262.77 representing the net rents collected by the conservator and receiver after March 14, 1933, and up to January 30, 1934, when the receiver surrendered possession of the property to the plaintiff as purchaser at the trustees' sale.

It is agreed by the parties that during the receivership period from March 14, 1933, to January 30, 1934, taxes in the sum of $2,273.16 had accrued upon the property and remained unpaid at the time of the sale and were never paid by the receiver, and that interest in the amount of $5,455 had accrued on the first trust notes, while the net rents collected after deducting the ordinary operating expenses, such as for light, heat, and janitor's services, amounted to $5,262.77.

In considering the issue presented by the facts, we think a plain distinction should be made between plaintiff's claim for recoupment from the rents of the overdue taxes paid by it, and its general claim for a recovery of all the rents collected from the property by the receiver.

■■ In our opinion it was the duty of the receiver, while in possession of the property, to pay the taxes upon it from the rents collected by him. It is universally recognized that when real estate is sold by a receiver through court proceedings the unpaid taxes accrued upon it are liens to be paid from the proceeds of the sale next after the payment of the court costs. In the present case such taxes, when properly considered, were expenses of the receivership, and fall within the provision of section 5238, Rev. St. (12 USCA § 196) which states that "all expenses of any receivership shall be paid out of the assets of such association [bank] before distribution of the proceeds thereof." In section 64a of the Bankruptcy Act of 1898, section 104 (a), tit. 11, USCA, it is said: "The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, State, county, district, or municipality in advance of the payment of dividends to creditors." In the case of In re Tyler, 149 U. S. 164, 187, 13 S. Ct. 785, 791, 37 L. Ed. 689, Mr. Chief Justice Fuller spoke for the court, saying that it is the "imperative duty of the court to recognize as paramount, and enforce with promptness and vigor, the just claims of the authorities for the prescribed contributions to state and municipal revenue."

In Coy v. Title Guarantee & Trust Co. (C. C. A.) 220 F. 90, 92, L. R. A. 1915E, 211, the court said: "And whether or not such taxes be a lien or a debt by the laws of the government within whose jurisdiction the property is situated, such taxes are and should be regarded by the courts as a preferred and paramount claim over all other claims, for they are essential to the existence and maintenance of the very government under which the property is acquired and protected." See Bear River Paper & Bag Co. v. City of Petoskey (C. C. A.) 241 F. 53; Union Trust Co. v. Great Eastern Lumber Co. (C. C. A.) 248 F. 46; Hammond v. Carthage Co. (C. C. A.) 8 F.(2d) 35, 38; MacGregor v. Johnson-Cowdin-Emmerich, Inc. (C. C. A.) 39 F.(2d) 574; Central Vermont R. Co. v. Marsch (C. C. A.) 59 F.(2d) 59.

In our opinion these principles apply to the taxes involved in the present case. The receiver collected the rents from the prop-

erty while it was subject to his control. From the proceeds he rightly paid the ordinary operating expenses of the property. It was equally his duty to pay the taxes upon the property as they accrued, for these were expenses of operation or management of the trust. This duty was imposed upon the receiver in the interest and service of the government as well as by the proper management and control of the assets of the estate. It is clear that if the receiver had made sale of the property the taxes would have been the first charge upon the proceeds of the sale, but, notwithstanding that the receiver did not make the sale, the taxes nevertheless were the first charge upon the rents which he had collected from the property.

In Hammond v. Carthage Sulphite Co., supra, it is said: "We think it clear that, so far as the taxes levied before the appointment of the receiver are concerned, the trust company is merely a general creditor; the claim arising out of breach of covenant by Carthage Company. But, so far as taxes levied while the mortgaged property was in possession of the receiver are concerned, there can be no default by Carthage Company, which was inhibited from paying; and the amount paid by the trust company cannot give rise to a claim for breach of contract against Carthage Company. Consequently we consider taxes levied against the property while in the hands of the receiver as expenses of the receivership. Therefore the receiver should reimburse the trust company for the taxes of 1924 out of whatever funds he may ultimately have to pay receivership charges."

It is claimed by plaintiff that the residue of the rents collected by the receiver and remaining in his hands after the payment of taxes, as above provided, should be paid to plaintiff, upon the theory that plaintiff's lien constituted a preferred claim upon the rents as well as upon the corpus of the mortgaged estate. We cannot agree with this contention. Under the terms of the deed of trust the debtor was entitled to the possession of the premises and to enjoy the rents and profits of possession until a default should be made in the terms of his obligation. In case of such a default the trustees were to offer the property for sale for the payment of the debt and charges. Accordingly the bank, as owner of the premises, was entitled to the rents and profits accruing therefrom as it collected them, pay-

ing the expenses including the taxes from the collections. The receiver succeeded to the rights of the bank and the plaintiff took no legal steps to secure possession of the property nor to cause a sale of it until in January, 1934, when with the consent of the receiver the property was put to sale. It is the established rule that in such case the mortgagee does not become entitled to the rents collected by the mortgagor. In Freedman's Sav. & T. Co. v. Shepherd, 127 U. S. 494, 8 S. Ct. 1250, 32 L. Ed. 163, it is held that when a mortgage contains no provision for the payment of rents and profits to the mortgagee while the mortgagor remains in possession, the mortgagee is not entitled—as against the owner of the equity of redemption—to the rents and profits of the mortgaged premises until he takes actual possession, or until possession is taken in his behalf, even though the income may be expressly pledged as security for the mortgage debt, with the right in the mortgagee to take possession upon failure by the mortgagor to perform the conditions of the mortgage.

In Eastern Trust & Banking Co. v. American Ice Co., 14 App. D. C. 304, it is said that until the mortgagee takes actual possession of the mortgaged property, the mortgagor, or his assignee, is not liable, without an express covenant to that effect, to pay rent, and is entitled to take the rents and profits to his own use. Citing Teal v. Walker, 111 U. S. 242, 4 S. Ct. 420, 28 L. Ed. 415, and Willis v. Eastern Trust & Banking Company, 169 U. S. 295, 18 S. Ct. 347, 42 L. Ed. 752.

We hold accordingly that the amount of the rents remaining in the hands of the receiver after the payment of the taxes as above provided is not covered by the lien of the trust deed. This amount is an asset in the hands of the receiver subject to be disposed of by the Comptroller without preference for plaintiff's lien.

We therefore affirm the decree of the lower court in so far as it requires the payment to the plaintiff of the amount of taxes paid by plaintiff, to wit, the sum of $2,273.16, but reverse the decision in so far as it requires the payment to plaintiff of the amount of rents in excess of the amount required to pay the taxes; and this cause is remanded to the lower court for such proceedings as are necessary to give effect to the foregoing judgment.

Affirmed in part; reversed in part.