**Bruce GOLDSTEIN, Plaintiff,**

v.

**MADISON NATIONAL BANK OF WASHINGTON, D.C., et al., Defendants.**

Civ. A. No. 86–0016.

United States District Court, District of Columbia.

March 23, 1988.

1. The terms of payment of the debt and the actual amount owed were the subject of negotia-

Lawrence A. Katz, Ronald R. Massumi, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, D.C., for plaintiff.

Brian P. Leitch, Arnold & Porter, Washington, D.C., for defendants.

## MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON, District Judge.

This matter is before the Court on appeal from a decision of the Bankruptcy Court finding that the agreement at issue in this matter was an absolute assignment and not an assignment for security. The Court affirms the decision of the Bankruptcy Court.

## STATEMENT OF THE CASE

As this matter has been before the Court on a related issue, a detailed recital of all the facts will not be necessary. The case, in short, involves an agreement executed on January 6, 1982, between BKC, Inc., (BKC) and appellees Robert F. Comstock (Comstock) and Madison National Bank (Madison) to extinguish outstanding debts owed to the appellees by BKC. This contract provided that when the Saudi Arabian Army Air Defense Command (ADC) paid moneys owed to BKC,[1] a portion of that payment would go directly to appellees. BKC and ADC reached a settlement on March 16, 1982, whereby ADC agreed to pay BKC approximately $1,000,000.00, of which $200,000.00 would be paid directly to appellees pursuant to the agreement. These moneys were forwarded to Comstock who was acting as representative for his own interests and as retained counsel for Madison. Comstock received the funds on April 30, 1982, and on May 1, 1982, by personal check, distributed $61,398.54 to his client, Madison. The remainder represented funds due him from BKC. On May 4, 1982, BKC filed for bankruptcy and the Trustee, Bruce Goldstein, sought to have the funds paid to appellees returned, pursuant to 11 U.S.C. § 547(b)(4)(A). This sec-

tion when the assignment was executed.

tion allows the Trustee in bankruptcy to void a transfer of property that was made within ninety days of filing the petition for bankruptcy.[2]

The issue before this Court is whether the agreement entered into between Comstock and BKC on January 6, 1982, was an absolute assignment or an assignment for security. If the agreement were an assignment for security, then it did not become effective until the funds became available,[3] on or about April 30, 1982, which was within ninety days of BKC filing for bankruptcy. If, on the other hand, the agreement were an absolute assignment, it became effective upon execution which was more than ninety days before BKC filed for bankruptcy. Thus, if the agreement were an assignment for security, the Trustee may recover the $200,000.00 for the bankrupt's estate; if it were absolute, he may not.

The Bankruptcy Court issued an Opinion on December 30, 1983, finding that the parties had executed an absolute assignment and not an assignment for security and declared that the Trustee could not recover the funds paid appellees. In reaching this decision the Bankruptcy Judge made several determinations. First he held, based on the evidence submitted and the testimony adduced, that the assignment at issue was absolute and not merely an assignment for security. Next, the Bankruptcy Court ruled that this assignment was perfected despite the fact that no financing statement was filed. To reach this conclusion the Bankruptcy Court determined first that the law of the State of Maryland was applicable to this action. This was a necessary prerequisite because section 9–104(f) of the Uniform Commercial Code (section 9–104(f)), which provides that no financing statement need be filed to perfect an absolute assignment, was not then effective in the District of Columbia,

although it was operative in the State of Maryland. Thus, by choosing Maryland law and applying section 9–104(f), the Bankruptcy Court held that all of the requirements of an absolute assignment had been met and found it effective as of the date of execution. The Trustee, therefore, could not void the transfer of funds to the appellees.

The case then came to the District Court on appeal of the Bankruptcy Court decision. On May 31, 1985, the District Court issued an Order reversing the Bankruptcy Court's decision to apply Maryland law, finding instead that the *Erie* doctrine mandated the application of the law of the District of Columbia. It further found that section 9–104(f) did not become effective in the District of Columbia until two months after the execution of this contract and therefore did not remove the financing statement requirement. The District Court reasoned that 9–104(f) was not merely a clarification of existing law but was new law which could not be applied retroactively to the assignment. Having reached the conclusion that a financing statement was necessary, and there being a stipulation between the parties that no such statement was filed, the District Court found that the assignment was never perfected and remanded the case to the Bankruptcy Court without deciding if the assignment were absolute or merely a security interest.

The case then proceeded to the Court of Appeals, where the decision of the District Court regarding the applicable choice of law was upheld. However, the District Court's determination that 9–104(f) would not be applied retroactively was reversed. The Court of Appeals determined that 9–104(f) was applicable to the instant action as it was merely a clarification of existing law. A financing statement, therefore, was not required. The Court of Appeals remanded the case to the District Court to

---

**2.** 11 U.S.C. § 547(b)(4)(A) provides:
 "(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor ...
 (4) made—
 (A) on or within 90 days before the date of the filing of the petition ..."

**3.** An assignment for security is not effective until perfection. *See Ralston Purina Co. v. Como Feed & Milling Co.,* 325 F.2d 844, 846 (5th Cir.1963).

review the findings of the Bankruptcy Court that the agreement at issue was an absolute assignment and not an assignment for security, 807 F.2d 1070 (1986).

The District Court is now called upon to review the Bankruptcy Court's findings of fact and conclusions of law and determine if it properly concluded that the assignment was absolute. The Trustee maintained before the Bankruptcy Court, and now on appeal, that even if the assignment were absolute, the transfer of funds should not be permitted as the money from ADC was not received pursuant to the original contract between ADC and BKC, but rather was disbursed according to the settlement agreement of March 16. As the agreement referred to the *contract* and not the *settlement agreement* between BKC and ADC, appellant argued that appellees were not entitled to the $200,000.00. The Bankruptcy Court found that because the settlement agreement concerned the same parties and services as the contract referred to in the assignment, defendants were entitled to the funds. The Trustee also appeals this decision by the Bankruptcy Court.

## DISCUSSION

At the outset it is important to note that review in the District Court is very limited. The Court must defer to the judgment of the Bankruptcy Court on findings of fact unless they are found to be clearly erroneous. Federal Rules of Civil Procedure 52(a). In *Case v. Morrisette*, 475 F.2d 1300, 1307 (D.C.Cir.1973) the Court held:

"[T]he findings [of the Bankruptcy Court] are presumptively correct and the burden of persuading us that they are 'clearly erroneous' rests upon [the appellant]. Equally certain is it that we are not to weigh the evidence *de novo*, or disturb the findings simply because we might have reached a contrary result on the same evidence. And not only must we give 'due regard ... to the opportunity of the trial court to judge of the credibility of witnesses,' but we must also measure the findings by the 'clearly erroneous' test even when they are based on inference drawn from documents or undisputed facts."

Therefore, deference must be accorded the findings of fact with respect to the evidence presented and the demeanor and credibility of the witnesses unless such findings are clearly erroneous. This Court's responsibility is to review the record and determine if the Bankruptcy Court's factual findings are supportable and are consistent with it legal conclusions. However, "[t]he test for the district court ... is not whether a different conclusion from the evidence would be appropriate, but whether there is sufficient evidence in the record to prevent clear error in the trial judge's findings." *In re Bardwell*, 610 F.2d 228, 230 (5th Cir.1980).

To begin the inquiry, it is necessary to define the terms. A security interest, under the law of the District of Columbia,[4] is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation." D.C.Code § 28:1–201(37). An assignment, on the other hand, "effectively transfers title or right to receive proceeds." *In re Nivens*, 22 B.R. 287 (Bankr.N.D.Tx.1982). To determine whether the agreement at issue was a security or absolute assignment, the Court must search for the intent of the parties. This intent is to be discerned from the contents of the document, the testimony of the contracting parties, and the circumstances surrounding the transaction. *Mid–Atlantic Supply v. Three Rivers Aluminum Co.*, 790 F.2d 1121 (4th Cir.1986); *Miller v. Nuss*, 545 F.2d 916 (5th Cir.1977), *cert. den., Nuss v. Looney*, 430 U.S. 987, 97 S.Ct. 1687, 52 L.Ed.2d 382 (1977).

Appellant Goldstein raises three arguments on appeal. First, he maintains that the evidence presented to the Bankruptcy Court, primarily the assignment itself, and the documents and testimony describing the events before and after the execution

---

4. The effect and validity of the assignment at issue herein is judged by local law. *See Goldstein v. Madison National Bank of Washington*, 807 F.2d 1070, 1072 (D.C.Cir.1986); 69 Am Jur 2d, § 517, at 400–01.

of the assignment, warrant a finding that the assignment was one for security. Second, appellant avers that the Bankruptcy Court misapplied the law in reaching its determination. Finally, the appellant contends that the assignment did not effectuate a transfer of funds. Predictably, appellees vigorously oppose each of these arguments. After careful review of the submissions of the parties, the oral and written opinions of the Bankruptcy Court, and the transcript of the proceedings, this Court finds that the findings of the Bankruptcy Court are not clearly erroneous, and are supported by the evidence; the law was correctly applied; and, the conclusions of law are supported by the record.

A. *The Factual Evidence*

In evaluating the evidence presented to the Bankruptcy Court, the Court begins with an examination of the assignment. Indeed, the language of the assignment is consistent with the finding that it is absolute and not one for a security interest. As the Bankruptcy Court noted, the first paragraph states that BKC "orders, assigns, transfers and sets over" to defendant Comstock, "the sum of Two Hundred Thousand Dollars ... now due and payable to BKC, Inc. ... under a certain contract ... between BKC, Inc. and the Saudi Arabian Army Air Defence [sic] Command Planning & Projects Directors." The second paragraph, too, "directs" the ADC to "deliver the payment of Two Hundred Thousand Dollars ... to the assignee." The Bankruptcy Court found that the plain meaning of this language evinced an intention to create an absolute assignment. There is nothing unreasonable or erroneous about this conclusion.

The Trustee maintained at trial and now on appeal that the third paragraph, which contains a recourse provision, is evidence that the defendants meant this agreement to be an assignment for security. The Bankruptcy Court noted this argument and found that defendants' explanation that this was merely "gratuitous language" was

credible. The Court found that the agreement must be read in its entirety. It noted that the agreement was completely devoid of any clear language indicating an intent to create a security interest, and giving weight to the language of the agreement which demonstrates an intent to create an absolute assignment, found that the agreement itself supported a finding of absolute assignment.

The Court finds that there is substantial support in the record for the Bankruptcy Court's assessment of the agreement. While the specific language of a document is not necessarily dispositive in the search for contractual intent, it should not be ignored. In addition, a court should evaluate the document as a whole in reaching its decision, assessing equally all segments. *Kass v. William Norwitz Co.*, 509 F.Supp. 618 (D.D.C.1980). In this case, the Bankruptcy Court weighed the language evincing an intention to create an absolute assignment against the existence of the recourse provision. Believing the latter to be of less import, the Bankruptcy Court ruled that the document supported a finding of absolute assignment.

The Court does not find this assessment to be clearly erroneous. The finding that the recourse provision was not dispositive is supported by case law. In *Major's Furniture Mart, Inc. v. Castle Credit Corp.*, 602 F.2d 538, 544 (3rd Cir.1979), the Court stated that "the presence of recourse in a sale agreement without more will not automatically convert a sale into a security interest." Moreover, the Court was not in error in concluding that surplus language is sometimes found in contracts of this type. *See White v. Roughton*, 689 F.2d 118, 120 (7th Cir.1982), *cert. den.*, 460 U.S. 1070, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983). Indeed, the language in the agreement was very similar to that in *Lyon v. Ty–Wood Corporation*, 212 Pa.Super. 69, 239 A.2d 819 (1968) [5] where the Court found that the assignment was not an interest in security, but rather was absolute. *See Id.* 239 A.2d

---

5. The assignment in the *Lyon* case stated: "Ty–Wood Corporation does hereby ... assign the sum of [$25,000] to the Assignees ... from the balance of the proceeds due and owing to it under the terms [of the contract]." *Id.* 239 A.2d at 821.

at 821. Accordingly, applying the required deference to the Bankruptcy Court's factual findings, this Court finds that its assessment of the document at issue is supported by sufficient evidence.

Turning to the circumstances surrounding the execution of the assignment, the Bankruptcy Court found, and the parties agree, that a letter dated January 5, 1982, from Comstock to Casey was particularly important. This letter, received the day before the execution of the assignment, made it clear that the parties were making arrangements to cover an existing debt between the defendants and BKC. The Bankruptcy Court noted that language as evincing an absolute assignment was intended. Oral Opinion at 8.

The Trustee maintains that this letter demonstrates that the parties intended the assignment to be one only for security. The letter expresses defendant Comstock's interest in "secur[ing]" Madison's position with respect to the debt owed it and that it would "forbear any further legal action" against BKC if the assignment were executed. This language, argues the Trustee, is clear evidence that the assignment was not meant to be absolute but a "security" interest.

Again, there is sufficient evidence to support the Bankruptcy Court's contrary holding. While the Trustee correctly quotes this letter, he fails to mention that it also states that Madison National Bank requested Mr. Comstock to "proceed with whatever steps are necessary to collect the monies due." The weighing and balancing of this evidence is precisely within the purview of the Bankruptcy Court. It was, therefore, reasonable for the Bankruptcy Court to conclude that the letter does not support a finding that the agreement executed the next day was an assignment for security.

The testimony of all of the witnesses also was considered by the Bankruptcy Court. Comstock testified unequivocally that it was his intent to obtain an "irrevocable assignment." Although Casey's lack of understanding of the nature of an absolute assignment was obvious in his somewhat contradictory responses,[6] his testimony clearly disclosed that it was his intent to pay Comstock not more than a total of $200,000, regardless of any interest accrual, and that said sum would be paid directly by ADC. Moreover, Casey did indicate on cross-examination that he believed the debt to be extinguished by the assignment. After hearing all of Casey's testimony, the Court concluded that his statements on cross-examination were credible. There is support in the record for this conclusion and the assessment of the trial judge will not be second-guessed.

The Trustee claims that several additional factors point to a conclusion that this was an assignment for security. He argues that appellees' failure to notify ADC of the assignment, as well as the fact that Madison did not mark the debt paid until Comstock actually remitted the amount, indicates that the parties understood the assignment to be one for security.

These arguments were presented to, and rejected by, the Bankruptcy Court. Notification, stated the Bankruptcy Court, is not a legal prerequisite to finding the assignment valid and absolute. BKC clearly informed ADC of the assignment's existence or ADC would not have forwarded the funds directly to Comstock. Thus, appellees' failure to notify ADC was not fatal. As for Madison's failure to mark the debt paid prior to the actual receipt of funds, the Bankruptcy Court did not find this omission to be indicative of a security interest. Comstock was acting as representative for himself and Madison in negotiations with BKC; so, in determining the

---

**6.** *At one point Casey was asked whether "[i]t was [his] understanding that the BKC obligation to [the] defendants was not wiped off once this document was executed ...?" Mr. Casey responded: "That was my understanding." Tr. at 42.*

*On cross-examination, however, Mr. Casey was asked: "Isn't it correct that in your discus-sions with Mr. Comstock at that time, that the agreed purpose of the assignment was to extinguish BKC's obligations both to Madison National Bank and to Mr. Comstock, to take care of them in their entirety?" Mr. Casey answered "That's correct." Tr. at 74.*

nature of the assignment executed between Comstock and BKC, Madison's individual actions regarding the debt are not germane. Moreover, it was perfectly natural for Madison to rely upon its legal representative and to mark the debt paid only upon receipt of funds. As the Bankruptcy Court held: "It ... appears after considering the matter in overall context ... [that Mr. Scanlon's actions were] consistent with the bank's practices ..." Oral Opinion at 14.

In his December 30, 1983, opinion, the Bankruptcy Judge summarized his factual findings on this issue as follows:

"Based on the recited facts and after assessing the credibility of the witnesses, bearing in mind that the burden of proof is on the defendants, the agreement that was entered into on January 6, 1982 was intended by the parties to be an absolute assignment of the monies that would be due from the ADC rather than an assignment as security."

Finding #10. Notwithstanding the argument of counsel for the Trustee that all the parties understood it to be an assignment for security, the Bankruptcy Court could and did properly find from a totality of the evidence that the agreement was an absolute assignment. The Court finds no reason to set aside this finding as clearly erroneous.

### B. *Misapplication of the Relevant Law*

The Trustee further attacks the Bankruptcy Court's holding arguing that the Court did not understand the relevant law. The Trustee maintains, for example, that the Court misunderstood the meaning of the term "absolute assignment", that the Court was in error by stating that a security agreement must contain language exhibiting an intention to grant a security interest, and that the Court's discussion of the validity of the assignment was irrelevant.

The Court is satisfied that the Bankruptcy Court did not in any significant way misunderstand the law in this matter. While on one occasion, the Court did refer to an absolute assignment as being synonymous with an irrevocable assignment, Oral Opinion at 5, it made clear on other occasions that it understood the meaning of an absolute assignment. For example, on page 10 of the Oral Opinion, the Court stated: "we must distinguish between an absolute assignment and whether or not this was an assignment for security." The Trustee also complains that the Bankruptcy Judge made unnecessary rulings such as finding the assignment valid as well as absolute and relying on the fact that a specific fund was to be assigned. These rulings do not render the Bankruptcy Court's decision clearly erroneous, regardless of their relevancy.

### C. *Effect of the Assignment*

■ Finally, the Trustee maintains that the transfer of funds should not be permitted as the agreement between BKC and the defendants was for funds from a contract between BKC and ADC which was never fulfilled. The Trustee, therefore, argues that the defendants are not entitled to any funds resulting from the settlement agreement between BKC and ADC.

The Bankruptcy Court wrestled with this issue and concluded that while they were technically two separate agreements, the settlement agreement "could not, of necessity, exist without regard to the underlying contract of May, 1979 ... the ultimate conclusion is that the funds ultimately due were due as a result of that contract." Oral Opinion at 18. The evidence of record was ample to support this finding. The Trustee argues that because the original contract supporting the assignment was never fulfilled, the defendants are entitled to nothing. For support they cite cases which hold that the assignee stands in the shoes of the assignor and is entitled to no more or less than the assignor. *See e.g., In Re L & S Offshore Caterers, Inc.*, 67 B.R. 25, 27 (Bankr.W.D.La.1986).

This case law does not contradict the opinion of the Bankruptcy Court. The Court held that the assignor did receive moneys from the same source and for the same services as originally contracted and, thus, the assignee is entitled to the funds received by the assignor. The form of

receipt of these funds does not alter defendants' right to payment. As the Bankruptcy Court stated in its written opinion:

> The receipt of funds by Mr. Comstock on April 30, 1982 and by Madison National Bank on May 3, 1982 was not a preference under 11 U.S.C. § 547(b) because the payment was made pursuant to the assignment, which became effective on January 6, 1982.

The Trustee has not met his burden of persuasion that the Bankruptcy Court's conclusion on this matter is clearly erroneous.

In sum, the Trustee has failed to meet his burden of persuasion that the findings of fact and conclusions of law of the Bankruptcy Court are clearly erroneous or contrary to law. The record of the proceedings before the Bankruptcy Court supports the findings and conclusions and, in addition, that appellees sustained their burden of proof in that forum. For these reasons, this Court affirms the decision of the Bankruptcy Court and denies the appeal of the Trustee. An Order consistent with this Memorandum Opinion will issue.