**In re 1301 CONNECTICUT AVENUE ASSOCIATES, Debtor.**

**Bankruptcy No. 88–00446.**

United States Bankruptcy Court, District of Columbia.

Aug. 10, 1990.

As Amended Sept. 10, 1990.

David R. Kuney, Washington, D.C., for debtor.

## AMENDED DECISION DENYING MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY

S. MARTIN TEEL, Jr., Bankruptcy Judge.

The debtor in this Chapter 11 case, 1301 Connecticut Avenue Associates, operates office building property at 1301—1317 Connecticut Avenue, N.W., in this district. Baltimore Federal Financial, F.S.A. ("BFF"), the debtor's secured lender, has filed two motions.[1] By the first motion (Docket Entry ("DE") 326) ("the rent motion") BFF seeks relief from the stay to allow it to collect rents from the debtor's tenants or, in the alternative, BFF seeks an order prohibiting the debtor from using the

rents as alleged cash collateral and requiring the debtor to replenish rents allegedly wrongly used. By the second motion ("the ground lease motion") BFF seeks relief from the automatic stay to recover the rent payable by the debtor under a ground lease between the debtor, as lessee, and Washington Properties Limited Partnership ("Washington Properties" or "the lessor"), the ground lessor, and seeks an order either directing the debtor to pay the rent due under the ground lease to BFF or, at a minimum, restraining the debtor from paying the rent to the lessor. In the alternative, BFF requests an order authorizing it to recover the ground rent directly from Washington Properties.

The Court, having considered the pleadings and the evidence and arguments of counsel presented at hearings on April 11, 1990, and May 11, 1990, concludes that both motions should be denied, based upon the following findings of fact and conclusions of law.

### FINDINGS OF FACT

The debtor was formed for the purpose of acquiring, rehabilitating and operating 1301–1317 Connecticut Avenue, N.W., Washington, D.C. ("the Property"). The debtor's interest in the Property is held pursuant to an Amended and Restated Indenture of Lease, dated May 2, 1985, as amended, ("the Ground Lease"), under which it leases the Property from Washington Properties.

About eight months after entering into the Ground Lease, the debtor entered into a construction loan agreement with BFF in order to finance renovation work at the Property. Under that construction loan agreement, BFF agreed to lend up to $12.5 million to the debtor ("the construction loan"), as evidenced by the Deed of Trust Note ("the Note") in that amount executed by the debtor in favor of BFF on December 24, 1985.

---

**1.** Since the filing of the motions, the Resolution Trust Corporation ("RTC") has been appointed as receiver for BFF pursuant to orders of the Director of the Office of Thrift Supervision of the United States Department of the Treasury. Technically, RTC is now the proper party, but this opinion will refer to BFF as though the motions are still BFF's.

The day before the Note was executed, as security for the loan, the debtor and Washington Properties executed a Deed of Trust in favor of BFF. The Deed of Trust, recorded in the land records of the District of Columbia on December 24, 1985, grants to the trustees thereunder all of the fee simple interest of the debtor and Washington Properties in and to the Property. Deed of Trust, p. 2, paras. A, B, and C. In addition, in regard to rents and profits, the Deed of Trust provides:

> [T]o secure the prompt payment of [the indebtedness under the Note] ... Grantor [debtor] and Landlord [Washington Properties] ... do hereby grant and convey in fee simple unto the Trustees all of their right, title, and interest in and to [the following property:]
>
>     *     *     *     *     *     *
>
> D. All leases, rents, issues, and profits of the Property, it being agreed that, so long as no default shall exist hereunder, Grantor or Landlord, as the case may be, shall have the right to collect and retain said rents, issues and profits. Upon request of Holder [BFF], Grantor and Landlord will execute and record, at Grantor's expense, such further assignments of rents, issues and profits and of Grantor's and Landlord's rights with respect to any leases or tenancies of the Land and Improvements, or any part thereof, as Holder may require. Holder shall have the right to notify any tenant or occupant of the Land or Improvements as to its rights hereunder and/or under such assignment. Neither Trustee nor Holder shall be obligated to perform any of Grantor's and/or Landlord's obligations in connection with any tenancy of the Land or Improvements.

Deed of Trust, pp. 2 and 3. In other words, under the Deed of Trust, Washington Properties and the Debtor retained the right to collect the profits of the Property ("the Rent") as long as no default occurred under the Deed of Trust. Article IV of the instrument sets BFF's remedies upon default, including a provision that—

> the Holder [BFF], ... without notice, may enter upon and take possession of the Property or any part thereof, and perform any acts, including the right to rent any part or all of the Property, which Holder deems necessary or proper to conserve the Property, and may collect and receive all rents, issues and profits thereof, including those past due, as well as those accruing thereafter. The Holder shall be entitled to also have a receiver appointed to enter and take possession of the Property, collect the rents and profits therefrom, and apply the same as the court may direct. * * * The right to enter and take possession of the Property, to manage and operate the same, to collect the rents, issues and profits thereof, whether by a receiver or otherwise, shall be in addition to ... any other right to remedy hereunder....

Deed of Trust, p. 18, para. 4.1C. Stated differently, under the Deed of Trust, BFF was granted the right to enter and take possession of the Property or to have a receiver appointed to do so, if BFF wanted to be able (or wanted a receiver to be able) to collect the Rents. BFF had not taken either step prior to the debtor's filing its bankruptcy petition.

Also as security for the construction loan and to secure the repayment of the Note, the debtor executed an Assignment of Leases ("the Assignment") on December 11, 1985, which, like the Deed of Trust, granted BFF an interest in the debtor's leases and rent. Assignment, p. 1, paras. A and B. The Assignment further states:

> This Assignment is an absolute present transfer and assignment to [BFF] of the Collateral [*i.e.*, all rights and interest in the lease and/or subleases, agreements, licenses or other agreements for occupancy and all Rents].
>
>     *     *     *     *     *     *
>
> 5. The intention of the parties is that this Assignment of Leases, Rents and Profits shall be a present assignment. Provided: (a) no default shall exist on the part of the Assignor under the Note or under any of the other Loan Documents, (b) Assignor has not breached any warranty, representation or agreement contained herein or therein, and (c)

there exists no material misrepresentation by Assignor in the Note or any of the other Loan Documents, then Assignor shall be entitled to collect all rents, rentals, fees, profits, payments, and other sums of money that become due and payable under the Leases.... In the event of any such default, breach or misrepresentation by Assignor and the expiration of the applicable grace period, if any, Assignee [BFF] shall have the right, power and privilege (but shall be under no duty) to take possession of the premises described in the Leases, or any part thereof, including any documents, books, records, plans and specifications and accounts of Assignor related thereto, and to have, hold, manage, lease, insure, and operate (including the making of repairs, alterations, additions and betterments) the same on such terms and for such period of time as Assignee may deem proper, and either with or without taking possession of said premises, Assignee shall have the right, power and privilege (but shall be under no duty), and is hereby appointed by Assignor to act as its true and lawful attorney-in-fact, with power of substitution, immediately to collect and sue for, in its own name, or in the name of Assignor, such rents, rentals, fees, payments and/or other sums of money as they become due. A written demand by Assignee to any lessee for the payment of rent, rentals, fees, profits, payments and other sums of money that become due under the Leases, after the occurrence of any such default, breach or misrepresentation by Assignor claimed by Assignee, shall be sufficient to require such lessee to make all future payments of such rents, rentals, fees, payments and other sums of money directly to Assignee without the necessity for further notice to such lessee or consent by Assignor.

\*    \*    \*    \*    \*    \*

Assignment of Leases, pp. 2 and 5. The language of the Deeds of Trust and of the Assignment, the circumstances surrounding those documents and the testimony of the one witness who testified concerning the negotiations leading to the documents persuade the Court that both the Deed of Trust and the Assignment were intended only to pledge rents as a security interest protecting against default and were not intended as absolute assignments.

Renovation of the Property began in March of 1986, and the Property entered its lease-up phase in 1987. At the time the debtor executed the Deed of Trust and the Assignment, the Property had no tenants and the debtor had executed no leases.

By letter dated April 21, 1987, BFF, by its attorney, notified the debtor that it was in default under the Note and Deed of Trust, giving the debtor, in accordance with the parties' agreement, 40 days to cure the purported defaults as listed in the letter. The letter also stated:

In addition, this letter shall constitute written notice that Lender [BFF] has determined that the Loan proceeds remaining to be disbursed are not sufficient to pay the cost of completing the renovation of the improvements, interest on the loan and operating expenses, and that Lender is requiring Borrower [debtor] to furnish additional funds in the amount of $610,-000.00 to cover the resulting deficit before advancing any additional Loan proceeds.

\*    \*    \*    \*    \*    \*

The Lender hereby reserves all of its rights and remedies with respect to the foregoing defaults and the request for additional funds, as well as the right to issue supplemental notices pertaining to the foregoing defaults, additional notices pertaining to other defaults occurring prior to or subsequent to the date of this notice and further requests for additional funds.

On February 8, 1988, BFF sent a letter to the debtor (in care of Linsdorff Corporation and Dover Administrative Services, Inc.) notifying the debtor that the $12.5 million Construction Loan had "matured on December 24, 1987, and is due and payable in full," with a principal balance as of January 31, 1988, of $11,428,387.38 (including interest advanced through the period ending December 24, 1987). The letter indi-

cated that simultaneous notice of default had been given to Washington Properties, giving them ten days following the receipt of the notice within which to cure the default in order to prevent the commencement of foreclosure proceedings.

The debtor filed its voluntary petition under Chapter 11 on February 16, 1988, ("the petition date"). BFF's claim, which is being contested in a separate adversary proceeding, totals roughly $15.4 million today. BFF never waived its rights, as least as to future rents, to assert its interest in those rents.

For purposes of these motions, the appraisals of BFF's experts are assumed to be accurate. When the interests of the debtor and Washington Properties are unified, the Property has a fair market value of $15.6 million. When the two interests are valued separately, the debtor's interest in the property has a value of $12.8 million and the ground lessor's interest has a value of $1.84 million.

## CONCLUSIONS OF LAW

BFF makes three arguments. First, it argues that it has an absolute assignment of the rents. Second, it argues alternatively that it had a perfected pledge of the rents when the petition was filed. Third, it argues that it has perfected its pledge postpetition under 11 U.S.C. § 546(b). For reasons developed hereinbelow, these arguments must be rejected. BFF does not have an absolute assignment of the rents, and its security interest in the rents is merely inchoate and is ineffective as to any rents that accrue before it obtains possession of the real property voluntarily or has a receiver appointed to take possession of the property to operate the property and collect rents. Although by virtue of 11 U.S.C. §§ 362(b)(3) and 546(b), BFF may take steps to perfect an interest in future rents, that requires a showing that the value of its security is less than its claim. That has not been done.

2. A deed of trust is viewed as a form of mortgage in the District of Columbia. *Yasuna v.*

I

## BFF HAS NO ABSOLUTE ASSIGNMENT OF RENTS

District of Columbia law distinguishes between absolute assignments of rents to a mortgagee [2] versus assignments that are made for the purpose of securing the indebtedness. In *Hardee v. American Security & Trust Co.*, 77 F.2d 382 (D.C.Cir.), *cert. denied*, 296 U.S. 595, 56 S.Ct. 110, 80 L.Ed.421 (1935), the court stated:

Under the terms of the deed of trust the debtor was entitled to the possession of the premises and to enjoy the rents and profits of possession until a default should be made in the terms of his obligation. Accordingly, the [debtor] as owner of the premises, was entitled to the rents and profits accruing therefrom as it collected them, paying the expenses including the taxes from the collections. The ... plaintiff took no legal steps to secure possession of the property nor to cause a sale of it until in January, 1934, when ... the property was put to sale. It is the established rule that in such case the mortgage does not become entitled to the rents collected by the mortgagor. In *Freedman's Sav. & T. Co. v. Shepherd*, 127 U.S. 494, 8 S.Ct. 1250, 32 L.Ed. 163, it is held that *when a mortgage contains no provision for the payment of rents and profits to the mortgagee while the mortgagor remains in possession, the mortgagee is not entitled*—as against the owner of the equity of redemption—*to the rents and profits of the mortgaged premises until he takes actual possession or until possession is taken in his behalf, even though the income may be expressly pledged as security for the mortgage debt, with the right in the mortgagee to take possession upon failure by the mortgagor to perform the conditions of the mortgage.*

In *Eastern Trust & Banking Co. v. American Ice Co.*, 14 App.D.C. 304, it is

*Miller*, 399 A.2d 68 (D.C.1979).

said that until the mortgagee takes actual possession of the mortgaged property, the mortgagor, or his assignee, is not liable, without an express covenant to that effect, to pay rent, and is entitled to take the rents and profits to his own use. Citing *Teal v. Walker*, 111 U.S. 242, 4 S.Ct. 420, 28 L.Ed. 415, and *Willis v. Eastern Trust & Banking Company*, 169 U.S. 295, 18 S.Ct. 347, 42 L.Ed. 752.

*Hardee*, 77 F.2d at 385 (emphasis added). *See also Hyde v. Brandler*, 118 A.2d 398 (D.C.1955); *Totten v. Harlowe*, 90 F.2d 377 (D.C.Cir.), *cert. denied*, 301 U.S. 711, 57 S.Ct. 945, 81 L.Ed. 1364 (1937). Drawing on the dictum in *Eastern Trust & Banking Co.* concerning an "express covenant," BFF argues that, when there is an express covenant for the rents to be paid to the mortgagee, the assignment is effective without the necessity of the mortgagee's taking possession. But the dictum must be read in the context of the first paragraph quoted above which distinguishes between, on the one hand, an absolute assignment of the rents at the outset, without regard to the mortgagor's performance on the mortgage and, on the other, an assignment for security purposes, a pledge. For example, the parties may stipulate that the debtor will instruct the tenants to pay rents directly to the mortgagee. Where, as here, the assignment was instead for security purposes, possession is necessary to perfect an interest in rents.

■ Thus, the District of Columbia is with the majority of states which require that a mortgagee take possession of the premises before he may claim entitlement to the rents, even though the income may be expressly pledged as security. *Osborne on Mortgages*, § 150 at 252–3 (2d ed. 1970). This rule of law is supported by strong equitable considerations. As observed in *Gilman v. Ill. & Miss. Tel. Co.*, 91 U.S. 603, 23 L.Ed. 405 (1875):

Possession draws after it the right to receive and apply the income. Without this the [property] could not be operated, and no profit could be made. Mere pos-

session would have been useless to all concerned.

*Id.* at 617. In an analysis of Massachusetts law on this subject,[3] the court concluded in *In re Prichard Plaza Associates Ltd. Partnership*, 84 B.R. 289 (Bankr.D. Mass.1988), that a mortgagee must take possession of the property in order to have the right to collect rents, even if he has a specific assignment of the rents.

There the court stated:

Rents, furthermore, do not spring from the ground. Real estate must be maintained and serviced to produce them, much as a contract must be performed to bring payment under it. We do not suggest that the Bank is improperly attempting to reap what it has not sown. A secured party is entitled to the fruits of its Debtor's labors if those fruits constitute the collateral. But here the Bank wants a continuum of fruits while the Debtor remains in harness without sustenance. Equitable considerations hardly support such proprietorial serfdom.

*Id.* at 298.

■ BFF argues that it has an absolute assignment of the rents. This argument must be rejected. First, both the Deed of Trust and the Assignment expressly state that the rents are pledged as additional security for the Note. Deed of Trust at 2; Assignment at 2. Second, the Deed of Trust and the Assignment authorized the Debtor to collect and to use the rents subject to BFF's option, upon default, to take possession of the rents. These facts demonstrate that the rents were not absolutely assigned to BFF but rather secured repayment of the note. Facing similar contractual language, the court in *In re Harbour Town Associates, Ltd.*, 99 B.R. 823, 825 (Bankr.M.D.Tenn.1989) (superseded by statute as stated in *In re McCutchen*, 115 B.R. 126 (Bankr.W.D.Tenn.1990)), held that the mortgagee held a pledge of the rents and not an absolute assignment. As the court held in *In re Association Center Ltd. Partnership*, 87 B.R. 142, 145 (Bankr.W.D. Wash.1988), the mere presence of the

---

**3.** Like the District of Columbia, Massachusetts is also an "intermediate" state (versus a "lien" or "title" state) which regards a mortgagee as holding bare legal title without right of possession.

words "as additional security" in connection with the assignment is dispositive in establishing that the assignment grants only a security interest in the rents.

The cases on which BFF relies are distinguishable. In *In re Fry Road Associates, Ltd.,* 64 B.R. 808 (Bankr.W.D.Tex.1986), the debtor not only executed an assignment of rents but also, before filing bankruptcy, the debtor had instructed its tenants to pay the lender directly. There was no such instruction in the present case.

Other cases cited turned on state statutes that made the assignments absolute. *In re Aloma Square, Inc.,* 85 B.R. 623 (Bankr.M.D.Fla.1988) (statute makes assignment operative and absolute upon written demand after default); *Matter of P.M.G. Properties,* 55 B.R. 864, 868 (Bankr.E.D.Mich.1985) (assignment becomes absolute by statute upon mortgagor's default). There is no similar statute in the District of Columbia.

The case of *In re Winslow Center Associates,* 50 B.R. 679 (Bankr.E.D.Pa.1985), turned on New Jersey law which holds that a mortgagee has title to rents if the mortgagee is given a present interest by the mortgage terms, albeit for security purposes, instead of an interest only upon default. This represents a state law view inconsistent with District of Columbia law which focuses on whether the rents were assigned as security. *Hardee,* 77 F.2d at 385; *Freedman's Savings & Trust Co.,* 127 U.S. at 494, 8 S.Ct. at 1250.

The case of *In re Gould,* 78 B.R. 590 (D.Idaho 1987), held that absolute assignments existed when the deeds of trust provided either (1) that there was an absolute assignment with the borrower being authorized prior to a notice of default to collect the rents and to apply the rents to the mortgage debt and the balance to the borrower's account or (2) an absolute assignment was to exist upon a default. *Gould* paid lip service to the requirement to examine the substance of the transaction but simply disregarded the plain fact that the rent assignments were only devices to secure the lender in the rents upon a default. The mere labelling of an assignment as "absolute" ought not, as occurred in *Gould,* end a court's inquiry into the substance of the transaction. Rather, the court must undertake to discern the actual intent of the parties "from the contents of the document, the testimony of the contracting parties and the circumstances surrounding the transaction." *Goldstein v. Madison Nat. Bank,* 89 B.R. 274, 276 (D.D.C.1988). Applying all those tests here, there was no absolute assignment of rents. Indeed, *Gould,* even if correctly decided, is distinguishable: in *Gould* a state statute forbade the receipt of extrinsic evidence, whereas extrinsic evidence could be received here and confirms the obvious interpretation of the documents as only security devices.

## II

## BFF DID NOT PERFECT ITS LIEN PREPETITION

█ Citing *In re Tripplet,* 84 B.R. 84 (Bankr.W.D.Tex.1988), BFF urges that its notice of default to the debtor perfected its pledge of rents. In *Tripplet* the court held that because the rents were assigned to the mortgagee, with only a reservation of a right in the debtor to use the rents until a default, perfection by a notice of default, without perfection via a receiver, would effectuate the intent of the parties. Whatever the merits of that analysis under Texas law, it cannot apply here. District of Columbia law requires possession to perfect. *Hardee,* 77 F.2d at 386.[4]

---

**4.** No District of Columbia case holds that a mere default notice suffices to perfect a pledge of rents. In *Freedman's Savings & Trust Co. v. Shepherd,* 127 U.S. 494, 502, 8 S.Ct. 1250, 1254, 32 L.Ed. 163 (1888), a case cited favorably in *Hardee,* 77 F.2d at 385, the Court observed that a demand "in proper form" for possession combined with a refusal of possession may perfect a pledge of rents. But *Hardee* does not cite *Shep-*

*herd* for that proposition. Moreover, *Shepherd* cites *Dow v. Memphis & L.R.R. Co.,* 124 U.S. 652, 655, 8 S.Ct. 673, 674, 31 L.Ed. 565 (1888), for the proposition and in *Dow* the mortgagee was not deemed to have perfected a pledge of rents until suit for possession was filed. In turn, *Dow* cites *Galveston R. v. Cowdrey,* 78 U.S. (11 Wall.) 459, 20 L.Ed. 199 (1871), for the broader proposition *Shepherd* mentions. But in

## III

## FILING OF A NOTICE OF PERFECTION UNDER 11 U.S.B. 546(b) DID NOT PERFECT A SECURITY INTEREST IN THE RENTS

BFF argues that it perfected its security interest in rents post-petition under 11 U.S.C. §§ 362(b)(3) and 546(b).[5] The question necessarily requires first an examination under District of Columbia law of the rules of perfection and the priority of such perfection as to other creditors.

### 1. *District of Columbia Law*

■ Even a mortgagee without a pledge is entitled to obtain a receiver to take possession of and operate real property and hold the remaining rents for a final disposition upon showing that—

(1) the mortgaged property is of insufficient value to insure payment of the debt;

(2) the mortgagor, or person liable for the deficiency, is insolvent; and

(3) unusual conditions make an immediate sale impractical or impossible.

*Totten v. Harlowe*, 90 F.2d at 380. In not requiring a showing of waste, the Court of Appeals stated "the loss inevitable in the delay takes the character of waste as clearly and distinctly as deterioration by the failure to make repairs or the cutting of timber, etc." *Id.* In *Totten* the mortgagor had succeeded in causing the suspension of foreclosure by the delaying tactic of appealing an order appointing substitute trustees under the deed of trust. The Court of Appeals effectively equated waste with the loss of the time value of money. Any concept of time value of money as equating with waste guarded against by the Bankruptcy Code's requirement of adequate protection under 11 U.S.C. §§ 362 and 363 was rejected by the Supreme Court in the case of an undersecured creditor. *United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). But if the Bankruptcy Code permits perfection of a security interest in future rents under state law and that state law permits the loss of the time value of money to be treated as satisfying a *state law* rule which requires a showing of waste, this does not contravene *Timbers*.

■ When can a mortgagee perfect an interest in rents that is prior to other creditors? A mortgagee who obtains the appointment of a receiver but has not taken a pledge is junior to the rights of a creditor that prior to the receivership had been granted a pledge of the rents. *Shepherd*, 127 U.S. at 504, 507, 8 S.Ct. at 1255, 1256 (case involving District of Columbia mortgage). It follows that a mortgagee without any pledge of rents may not invoke 11 U.S.C. § 546(b) to sue for a receiver under *Totten v. Harlowe*. Correspondingly, however, it would logically follow that a mortgagee who has a pledge of rents will, upon

---

*Cowdrey* the Court was merely observing that there had not even been the first step of a demand for possession and there is no suggestion that it was deciding that a demand alone would suffice. *See Cowdrey*, 78 U.S. at 483. Finally, although *Shepherd* dealt with District of Columbia realty, the Court's observations were meant to demonstrate that the mortgagee had not perfected a pledge of rents, not to delineate what would suffice. In any event, BFF does not suggest that it itself demanded possession and has placed no reliance on this dictum in *Shepherd*.

5. 11 U.S.C. § 362(b)(3) provides:

(b) The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay—

\* \* \* \* \* \*

(3) under subsection (a) of this section, of any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of this title.... 11 U.S.C. § 546(b) provides:

(b) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before such date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

taking possession or having a receiver appointed, take priority over any other entity that obtained a later pledge of rents. *See Shepherd,* 127 U.S. at 507, 8 S.Ct. at 1256. This is the rule in most states. *Osborne on Mortgages,* § 159 at 273–4 (2d ed. 1970). *See In re Gelwicks,* 81 B.R. 445 (Bankr.N.D.Ill.1987) (Illinois law). It thus follows that District of Columbia law would (1) permit BFF to perfect an interest in future rents upon making a *Totten v. Harlowe* showing and (2) permit such perfection to be effective against a hypothetical entity that acquires rights in those future rents on the date of the petition.

Nevertheless, it may be argued that § 546(b) does not apply because (1) obtaining a receiver is not "perfection" but creation of a security interest which before was only inchoate and (2) § 546(b) imposes a relation back requirement. Those arguments are addressed next.

### 2. *The act of obtaining possession is an act of "perfection" under § 546(b).*

■ Sections 362(b)(3) and 546(b) deal with perfection of an interest in property.[6] The term "perfection" is undefined. A mortgagee's rights to rents was characterized as "inchoate" as opposed to unperfected in *Prichard Plaza,* 84 B.R. at 298. That case states:

> The statute [§ 546(b)] refers to a concept of perfection such as that employed in the Uniform Commercial Code. H.R. Rep. No. 595, 95th Cong.k, 1st Sess. 371 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 86 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5872, 6327. That concept refers to action designed to give notice to third parties of the claimed security interest, either by filing or through possession. Here such notice has already been given; the Bank has recorded both the Mortgage and the Lease Assignment. *The act of possession we require is part of the process of completion of the security interest rather than perfection.*

*Id.* at 301. Other cases, often without the necessity of discussion, have viewed the term "perfection" as used more broadly and held it applicable to the act of obtaining possession in order to have a security interest in future rents effective against other creditors and purchasers. *E.g., Consolidated Capital Income Trust v. Colter, Inc.,* 47 B.R. 1008, 1011 (D.Colo.1985) (rejecting argument that legislative history of § 546 indicates statute is inapplicable to security interest in rents). There is no reason to view the word "perfection" in the case of real property rents as being limited by technical definitions of perfection in statutes dealing with personal property or mechanics liens. The types of property and security interests covered by § 546(b) are not limited. The references in § 546(b) to 11 U.S.C. §§ 544 and 545 make clear that by "perfection" § 546(b) means any steps for obtaining a security interest that cannot be defeated by a hypothetical creditor or purchaser under § 544 or § 545. As stated in *In re Microfab, Inc.,* 105 B.R. 152, 157 (Bankr.D.Mass.1989), "[t]o perfect a lien or other security interest is to satisfy all the conditions necessary to make the lien effective against third parties and, in the case of a statutory, non-consensual lien, against the property owner."

### 3. *Perfection against other persons with respect to future rents satisfies the requirement of the statute.*

The first sentence of § 546(b) requires that the perfection of the security interest "be effective against an entity that acquires rights in such property before the date of such perfection." This requirement has been called a retroactivity requirement but the statute does not use that term and it is inaccurate thus to label the statute. *Microfab,* 105 B.R. at 158 (§ 546(b) does not impose a "relation back" requirement). Some cases have seized upon the notion of a retroactivity requirement to hold that § 546(b) is inapplicable to a security interest in rents because perfection by the mortgagee's taking possession is ineffective as

---

**6.** Rents from real property of the estate are part of the property comprising the estate. 11 U.S.C. § 541(a)(6).

to rents accruing before the taking of possession. *Matter of Gotta,* 47 B.R. 198 (Bankr.W.D.Wis.1985); *Prichard Plaza,* 84 B.R. at 301; *Association Center,* 87 B.R. at 146; *In re Metro Square,* 93 B.R. 990, 999 (Bankr.D.Minn.1988), *rev'd by In re Metro Square,* 106 B.R. 584 (D.Minn.1989). But these cases are deficient in focusing on *all* rents, instead of *future* rents, as necessarily being the property that is in dispute. The statute simply does not impose such a limitation. When the words "future rents" are substituted for "property" in § 546(b), the question under § 546(b) is whether there is "any general applicable law that permits perfection of an interest in [future rents] to be effective against an entity that acquires rights in such [future rents] before the date of such perfection." In other words, the proper focus of § 546(b) is whether the entity invoking § 546(b) defeats the rights of a hypothetical entity that earlier acquires rights in the property in dispute. Section 546(b) "applies to any lien ... that has the effect of priming an earlier perfected interest in the property." *In re Microfab, Inc.,* 105 B.R. at 158.

### 4. *Mere filing of notice does not perfect.*

■ Even though § 546(b) may be invoked by a mortgagee, this Court must decline to follow those cases holding that it suffices to file a notice of perfection under the second sentence of § 546(b). *See, e.g., In re Casbeer,* 793 F.2d 1436, 1443 n. 21 (5th Cir.1986); *Gelwicks,* 81 B.R. at 448; *Consolidated Capital Income Trust,* 47 B.R. at 1012. The latter case holds that notice perfects and that the conditions for obtaining a receiver can then be addressed in a cash collateral hearing under 11 U.S.C. § 363. But that puts the debtor to the burden of a § 363 hearing before it may use its rents, even if it turns out that the conditions for a receivership cannot be shown to exist. That is putting the cart before the horse. The debtor ought to be allowed to use rents as non-cash collateral, *i.e.,* as not requiring a § 363 order for use, until the mortgagee makes the necessary showing that a receiver is appropriate. That is what happens outside bankruptcy and ought to follow in bankruptcy.

### 5. *Upon establishing the entitlement to a receiver, a mortgagee must perfect by filing notice.*

■ As debtor-in-possession, the debtor serves with the powers of a trustee. 11 U.S.C. § 1107(a). It would be inconsistent with 11 U.S.C. § 105(b) to appoint a receiver to take possession of the estate's sole asset when the debtor is attempting to use that asset to devise a reorganization. *Cf. In re Memorial Estates, Inc.,* 797 F.2d 516 (7th Cir.1986) (where automatic stay had, apparently, been lifted to allow foreclosure suit, receiver in foreclosure suit permissible but a receiver is not permissible when it would emasculate the trustee's role); *In re Cassidy Land & Cattle Co., Inc.,* 836 F.2d 1130, 1133 (8th Cir.), *cert. denied,* 486 U.S. 1033, 108 S.Ct. 2016, 100 L.Ed.2d 603 (1988) (trustee could obtain receiver when *he* foreclosed; does not contravene policy against appointing "a receiver for the estate in lieu of a trustee"). Although § 362(b)(3) lifts the automatic stay to permit perfection, this is tempered by the second sentence of § 546(b) which requires that when perfection is accomplished by seizure the perfection *must* be accomplished by filing a notice of perfection. The actual appointment of a receiver to take custody of the real property and to collect the rents would be a form of "seizure" under § 546(b) and would violate 11 U.S.C. § 105(b). Accordingly, this Court holds that, upon a showing that a receiver would be appropriate under District of Columbia law, the bankruptcy court may not appoint a receiver to complete the mortgagee's perfection of its security interest. Rather, the mortgagee is required to complete this last step of the perfection process by filing a notice of perfection based on that showing.

### 6. *BFF Has Not Made a Showing That It Is Entitled to a Receiver*

Because a determination that a mortgagee is entitled to the appointment of a receiver would be, in effect, a declaratory judgment, the mortgagee ought to file an adversary proceeding to obtain such a determination. Bankruptcy Rule 7001. The

**12**

automatic stay does not bar such a suit by virtue of 11 U.S.C. § 362(b)(3). Although evidence was presented that might bear on the receivership question, BFF did not seek a declaration that a receivership was appropriate. Neither party addressed the criteria for the appointment of a receiver. In these circumstances, the Court will not treat the issue as properly before it.

CONCLUSION

Preserving non-bankruptcy law entitlements remains an important general goal of bankruptcy law. *In re Central Ice Cream Co.,* 836 F.2d 1068, 1072 (7th Cir. 1987), citing *Butner v. U.S.,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) and *The Logic and Limits of Bankruptcy Law,* 7–67 (1986). The *Butner* case itself so held with respect to a mortgagee's rights in rents under the Bankruptcy Act. The Court stated that "in a properly administered scheme in which the basic federal rule is that state law governs, the primary reason why any holder of a mortgage may fail to collect rent immediately after a default must stem from state law." *Butner,* 440 U.S. at 57, 99 S.Ct. at 919. Although decided under the Bankruptcy Act (albeit after the enactment of the Bankruptcy Code), *Butner* ought to remain good law to the extent the statutory framework of the Bankruptcy Code can accomodate it. *In re Colter, Inc.,* 46 B.R. 510, 514 (Bankr.D. Colo.1984).

Outside bankruptcy an undersecured mortgagee of an insolvent debtor would, in the face of a delay of foreclosure proceedings, be entitled under *Totten v. Harlowe* to a receivership to take possession of the building, collect rents and operate the building and to deprive the debtor from using those funds on other matters. No justifiable policy reason can be articulated why in bankruptcy that same mortgagee ought not enjoy the same protection, as long as his right, upon perfection, would be superior to a hypothetical purchaser or lien creditor who perfected an interest on the date of the petition and as long as a receiver is not actually appointed to displace the trustee. The interpretation of §§ 362(b)(3) and 546(b) this Court adopts reaches that goal: the debtor-in-possession will have to

treat future rents as cash collateral if a mortgagee makes a showing that a receivership is appropriate. That cash collateral ordinarily would not be available for payment of administrative expenses, including attorney's fees, unrelated to the operation of the building, 11 U.S.C. § 506(c), thus mirroring what would occur outside bankruptcy. An insolvent debtor of an undersecured mortgagee ought not expect the mortgagee's perfected interest in rents to fund the debtor's non-operational expenses in its efforts to reorganize. At the same time, however, the perfecting is not automatic. As outside bankruptcy, the mortgagee must first show that a receiver is appropriate: the debtor is not saddled with the burden of going forward and showing the opposite before using the rents. In this case, BFF failed to make the necessary showing. Accordingly, its motions will be denied.

An appropriate Order will be entered.