# DOW *v.* MEMPHIS AND LITTLE ROCK RAILROAD COMPANY.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF ARKANSAS.

Argued January 9, 1888. — Decided February 20, 1888.

*Galveston Railroad* v. *Cowdrey*, 11 Wall. 459, affirmed to the point that when a railroad mortgage covers income, the mortgagor is not bound to account to the mortgagee for earnings while the property is in his possession until a demand is made therefor, or for a surrender of possession under the mortgage:

But the commencement of a suit in equity to enforce a surrender of possession to the trustees under the mortgage in accordance with its terms is a demand for possession, and if the trustees are then entitled to possession the company must account from that time.

THE facts on which this case rested were these :

Robert K. Dow, Watson Matthews, and Charles Moran are the trustees in two mortgages executed by the Memphis and Little Rock Railroad Company as reorganized, one on the first and the other on the second of May, 1877, to secure two separate issues of bonds. Each of the mortgages covered, among other things, "all the incomes, rents, issues, tolls, profits, receipts, rights, benefits and advantages had, received or derived by the party of the first part from any of the hereby conveyed premises," which included the railroad of the company; but it was provided that until default in the payment of interest or principal the company should "retain the possession of all the property hereby conveyed, and receive and enjoy the income thereof." In case of default for sixty days in the payment of interest the trustees were authorized to enter upon and take possession of "all and singular the charter, franchises

'and property . . . conveyed," " and take and receive the income and profits thereof."

The company failed to pay its interest falling due July 1, 1882, and thereafter. For this reason the trustees began this suit against the company in the Circuit Court of the United States on the 12th of February, 1884, praying that they might be put into the possession of the mortgaged property in accordance with the terms of the mortgage of May 2, 1877, and for the purposes therein expressed, " and that the defendant may be enjoined from interfering with their possession, or disturbing it in any way." On the 24th of March they applied for the appointment of a receiver, and the court on the 27th of that month granted the parties until April 7 to file briefs on the motion, but ordered " that the defendant, until further order herein, hold the property mentioned in the bill subject to the order of the court." On the 15th of April a receiver was appointed, and the company was ordered at once to " surrender possession of its said railroad, rolling stock, and all other money and property of every character" to him. To this order exceptions were taken by the company, so far as it directed the delivery of money to the receiver, on the ground " that all the money in its hands or possession was derived by it from the operation of the railroad and other property mentioned in the bill, and was its income and the income of said property, and that it had no money whatever, save such as was thus derived and received; " and that at no time had the plaintiff demanded possession of the property. On the 18th of April this motion was denied, but the receiver was directed to hold the moneys to be paid him " subject to the order of the court, and to be repaid to defendant should the court so adjudge."

On the 27th of March the company had in its hands $42,123.68. Between that date and April 15 the company paid out $46,458.16, and its earnings were such that, when added to the $42,123.68, there was enough to make these payments and leave a balance of $32,216.20, which was paid over to the receiver.

Certain persons, who were holders of bonds secured by the

mortgage of May 1, 1877, recovered judgments at law against the company for past due coupons amounting in the aggregate to more than the sum thus put in the hands of the receiver, and they presented petitions for payment out of the fund. Afterwards the court ordered the receiver to pay back the $32,216.20 to the company, and to turn over the mortgaged property to the trustees. The record did not show that there were any other creditors than such as were secured by the mortgages, which exceeded in amount the value of the property.

From that part of the decree directing the restoration of the money to the company the trustees took this appeal. The creditors who presented petitions for the payment of their judgments did not appeal, so that the only question presented here was whether the court erred in ordering the receiver to pay the $32,216.20 to the company instead of the trustees.

*Mr. U. M. Rose* for appellants.

*Mr. Wager Swayne* for appellee.

MR. CHIEF JUSTICE WAITE, after stating the case, delivered the opinion of the court.

It is well settled that the mortgagor of a railroad, even though the mortgage covers income, cannot be required to account to the mortgagee for earnings, while the property remains in his possession, until a demand has been made on him therefor, or for a surrender of the possession under the provisions of the mortgage. That is the effect of what was decided by this court in *Galveston Railroad* v. *Cowdrey,* 11 Wall. 459, 483.

In the present case a demand was made for the possession by the bringing of this suit, February 12, 1884, and from that time, in our opinion, the company must account. The bill was not filed to foreclose the mortgage, but to enforce a surrender of possession to the trustees in accordance with its terms. The court below decided that the trustees were entitled to the possession when the suit was begun, and from the decree to

that effect no appeal has been prosecuted. We must assume, therefore, that the demand was rightfully made, and ought to have been granted. It follows that after the suit was begun the company wrongfully withheld the possession, and under such circumstances equity forbids that it should retain, as against the mortgagee, the fruits of its refusal to do what it ought to have done. It is a matter of no consequence that a receiver was not appointed until April 15, or that an application was not made for such an appointment until March 24. If the surrender of possession had been made, as we must assume it ought to have been, as soon as the suit was begun, a receiver would have been unnecessary. All that was done afterwards in that particular was in aid of the suit and because of the refusal of the company to comply with the demand that had been made. It follows that from the time of the bringing of the suit the company itself is to be treated in all respects as a receiver of the property, holding for the benefit of whomsoever in the end it should be found to concern, and liable to account accordingly. In *Galveston Railroad* v. *Cowdrey*, before cited, the controversy was in respect to earnings before suit brought, and the suit was for foreclosure only, the court being careful to say in its opinion that it did not "appear that the complainants or their trustees made any demand for the tolls and income until they filed the present bill," and that "the bill itself did not contain any allegation of such a demand."

It remains only to inquire when the money which is the subject matter of the controversy was actually earned, and we have no hesitation in deciding, upon the evidence, that it must have been after the suit was begun. The admission is that on the 27th of March the amount in the hands of the company was $42,123.68. Between that date and April 15, the company paid out $46,458.16, which was $4334.48 in excess of what it had on hand at the beginning. On the 15th of April it had on hand $32,216.20, thus showing that its earnings from March 27 until then must have been $36,550.68. The fair inference from the evidence is that the receipts were all from the current earnings and the disbursements for the current

expenses. The railroad was all the time, before and after the suit, a "going concern," and its receipts and disbursements the subjects of current income account. Applying the disbursements as they were made from the income to the payment of the older liabilities for the expenses, as is the rule in ordinary running accounts, it is clear that, in the absence of proof to the contrary, the money on hand was earned pending the suit.

Under these circumstances, as there are no current expense creditors claiming the fund, we are satisfied that the money is to be treated as income covered by the mortgages, and should be paid to the trustees to be held as part of that security.

The decree of the Circuit Court is

*Reversed, and the cause remanded with instructions to enter a decree in accordance with this opinion.*