**DEMOCRATIC CENTRAL COMMITTEE OF the DISTRICT OF COLUMBIA, et al., Petitioners,**

v.

**The WASHINGTON METROPOLITAN AREA TRANSIT COMMISSION, Respondent,**

**D.C. Transit System, Inc., Intervenor**

**(Brookland Garage).**

**ON NOTICE OF INTENT TO TURN OVER POSSESSION OF BROOKLAND GARAGE PROPERTY.**

**Nos. 21865, 24398, 24415 and 24428.**

United States Court of Appeals, District of Columbia Circuit.

Filed Aug. 19, 1993.

Decided April 26, 1994.

Eric Rome, for intervenor D.C. Transit System, Inc.

Morris Kletzkin and Seth B. Shapiro, for Claire Chalk, Trustee and O. Roy Chalk.

David F. Williams, William J. Natbony, and Wendell V. Hall, for intervenor Cadwalader, Wickersham & Taft.

Leonard N. Bebchick, for Security Trust Co., N.A.

Gilbert Hahn, Jr. and Tanja H. Castro, for the Black United Front, et al., petitioners in No. 24428.

Landon G. Dowdey, for the Democratic Cent. Committee of the District of Columbia, et al., petitioners in Nos. 21865 and 24398.

Before: BUCKLEY and RANDOLPH, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge MacKINNON.

MacKINNON, Senior Circuit Judge:

The principal issue in this case arises under a deed of trust dated January 25, 1991, on the Brookland Garage property in the District of Columbia: D.C. Transit System, Inc. (Transit), mortgagor, and O. Roy Chalk, mortgagee. It presents the issue: when the mortgagor defaults in making payments on the mortgage, whether the mortgagee's mere

"demand [for] actual possession," without a foreclosure or receivership, is sufficient without further proceedings to acquire the right to immediate "possession" and the rentals of the property. Under the terms of the deed of trust and the law in the District of Columbia, we hold that the mortgagee by merely giving notice of a mere demand for possession does not acquire that right until he perfects his right to possession by legal proceedings. Other circumstances in this case would also deny possession and the rentals to the mortgagee at this time.

### STATEMENT OF CASE

The Washington Metropolitan Area Riders' Fund (Riders' Fund)[1] on March 30, 1993 obtained a judgment against Transit for $4,976,124.79 for unpaid restitutionary payments due the Riders' Fund. *See infra.* Thereafter the Riders' Fund started attaching (garnishing) the monthly rents Transit was receiving (and turning over to O. Roy Chalk) from District Cablevision Limited Partnership (Cablevision) on a ten-year lease by Transit of the Brookland Garage property. The rentals were turned over to O. Roy Chalk on a $7,000,000.00 deed of trust on the garage property (Claire Chalk, trustee), which deed of trust Mr. Chalk alleges is in default as to the payment of *interest*.[2] For purposes of this opinion we assume without deciding that the deed of trust is in default as to the payment of interest. The deed of trust was part of a loan and payback arrangement between O. Roy Chalk and Transit in which contributions were made to Transit by Mr. Chalk, chairman of Transit, when Transit was facing insolvency due primarily to an upcoming foreclosure of its principal remaining asset, its Car Barn, for failure to pay a $12,500,000.00 mortgage default and an upcoming judgment to pay the Riders' Fund upwards of $9,000,000.00 as restitution in a lawsuit over illegal fares collected by Transit when it was operating a transportation system in the District of Columbia.

Transit first attempted on May 4, 1993 to assign the "rents" of the Brookland Garage property to Mr. Chalk but the court enjoined that attempt for failure to comply with a prior order of the court requiring a statement of the terms and conditions of such assignments. Mr. Chalk now attempts to obtain these monthly rents by giving ten days "Notice" to the court and parties that Transit on his *mere demand* will "turnover *possession*" of the Brookland Garage property to O. Roy Chalk. "Notice" of such a turnover is required by the court's order of April 24, 1979. But the question arises as to whether this "Notice to turnover possession" complies with the court's order. See discussion *infra* at pp. 1155–56. Transfer of "possession" is a backhanded way of acquiring the Cablevision rents. The Supreme Court noted in *Freedman's Savings & Trust Co. v. Shepherd,* 127 U.S. 494, 501, 8 S.Ct. 1250, 32 L.Ed. 163 (1888), "possession draws after it the right to receive and apply the income."

The initial question also arises whether "possession" of the Brookland Garage property, which was conveyed in the deed of trust to O. Roy Chalk with the land (property) *"to secure* the prompt payment of the indebtedness"* (emphasis added), and the right to the rentals can be acquired by the mortgagee on his mere demand without perfecting his right to possession by initiating legal proceedings as District of Columbia law and the deed of trust provide.

### BACKGROUND FACTS

On August 19, 1993, counsel for Transit, the mortgagor, filed a "NOTICE OF D.C. TRANSIT'S INTENT TO TURN OVER POSSESSION OF BROOKLAND GARAGE PROPERTY" to O. Roy Chalk allegedly be-

---

1. The Riders' Fund was established for the benefit of the farepayers and riders of the Washington Metropolitan area as a separate Escrow/Agent Depositary account with the Security Trust Company, N.A. (the Trust Company), designated as the Washington Metropolitan Area Riders' Fund consisting of all moneys paid to Trust Company pursuant to the Compromise Agreement.

2. The Security Trust Company, N.A. attacks the validity of the deed of trust in a lawsuit now pending in the United States District Court: *Security Trust Company, N.A. v. D.C. Transit System, Inc., O. Roy Chalk, Claire Chalk, Federal Deposit Insurance Corporation,* No. 93–CV–02435 (D.D.C. filed Nov. 30, 1993).

cause of Transit's *default in paying interest* to Mr. Chalk on its promissory notes secured by the deed of trust on the Brookland Garage property. The deed of trust, from the date it was issued on January 25, 1991, designated Claire Chalk, the wife of O. Roy Chalk as trustee, on Mr. Chalk's behalf.[3]

Transit's notice was filed in an attempt to comply with the court order of April 24, 1979 which requires Transit to provide ten days notice to the court and interested parties of the "terms and conditions" of any disposition of Transit property with a market value in excess of $50,000.00. Possession of the Brookland Garage property satisfies the $50,-000.00 requirement. A number of parties to this proceeding, including the Black United Front, Democratic Central Committee, Cadwalader, Wickersham & Taft, and the Security Trust Company, filed objections to this attempted transfer on various grounds.

Previously, on March 30, 1993 this court entered a judgment against Transit in favor of the Riders' Fund in the amount of $4,976,-124.79 based on two defaulted promissory notes for unpaid restitution due the Riders' Fund and held by the Security Trust Company as Escrow Agent/Depositary for the Riders' Fund. The Security Trust Company promptly domesticated this judgment by filing it with the D.C. Superior Court in accordance with D.C.Code Ann. § 15–352 (Supp. 1993). The Trust Company, on behalf of the Riders' Fund, recently has been attaching the monthly rental payments on the Brookland Garage being paid to Transit as they become due. Other creditors have joined in such attachments.

The attachment of the Brookland Garage rentals by the Trust Company has been in aid of execution on the judgment as authorized by D.C.Code Ann. § 15–311 (1989). These attachments have served to preserve these rental payments by bringing them within the jurisdiction of the D.C. Superior Court until the respective parties' rights to these payments could be determined. On September 23, 1993, the Honorable Arthur L. Burnett, Sr., Judge of the Superior Court of the District of Columbia, issued an order denying the motions of Claire Chalk, Trustee, for a stay *pendente lite* and pending appeal and for reconsideration of the Superior Court's order granting the Security Trust Company's various motions for judgment of recovery of credits.

The order of the Superior Court stated that "the Court hereby affirms that neither Claire Chalk, Trustee nor Mr. O. Roy Chalk, *cestui que trust*, presently possess any entitlement to the garnished credits or any present right to receive, pursuant to their rights under the Deed of Trust granted by defendant [Transit] on the Brookland Garage property, rents paid by garnishee to defendant." In denying the motion for a stay, the Superior Court further stated:

the garnished rentals are deposited by STC [Security Trust Company] in the Riders' Fund at American Security Bank which [rentals] remain[ ] under the exclusive control of the United States Court of Appeals, and that Fund, now amounting to over $5 million, would be available to refund any monies erroneously paid over to STC should the Court of Appeals now agree with the legal contention being ad-

---

**3.** On November 16, 1993, O. Roy Chalk claiming reliance on Rule 43(b), Federal Rules of Appellate Procedure, moved the court to sign an order substituting William D. Rogers in the place and stead of Claire Chalk, as trustee in the deed of trust *"in all matters before the Court in ... [this] case."* Since the Rule only applies to a "party" and Claire Chalk is not a party in this case, the court declines to issue the requested order. Claire Chalk, the wife of O. Roy Chalk, has been acting improperly as trustee under the deed of trust on the Brookland Garage property since the first deed of trust was signed on December 22, 1987. She thus continues to bear responsibility from that date for all her acts as trustee. The closeness of her relationship to O. Roy Chalk, the owner of the secured debt, and her lack of impartiality disqualifies her from serving as trustee in association with her husband the owner. *Kent v. Livingstone*, 83 F.2d 316 (D.C.Cir.1936); *Canelacos v. Hollway*, 123 F.2d 934, 935 (D.C.Cir. 1941).

The Security Trust Company has also objected to the qualifications of Mr. Rogers to serve as trustee on the ground that he has been associated with Mr. Chalk and represented him in various real estate deals and ventures for a long period of time and had personally acted for Mr. Chalk in negotiations with the attorney for the Riders' Fund a little over a year ago in unsuccessful efforts to resolve various claims of the Trust Company arising out of this litigation.

vanced by O. Roy Chalk and Claire Chalk, Trustee.

The present Notice to "turnover possession" filed by Transit, as noted above, indicates that it proposes to transfer possession of the Brookland Garage property to Mr. Chalk based upon his mere demand following Transit's *default in paying interest* on its outstanding indebtedness to Mr. Chalk secured by the deed of trust. As the objections filed by the Security Trust Company state, Mr. Chalk by his attempt to obtain possession of the Brookland Garage property by a mere demand is seeking to "skirt judicial procedures and scrutiny and to assume the position of a continuing and perpetual holder of a superior lien on Transit's rental stream"[4]—where the rents, as the land itself, were conveyed *"to secure"* the payment of the debt and not absolutely.

It is apparent from the entire record in this case that Mr. Chalk, in seeking *"possession"* of the Brookland Garage property, in addition is attempting to acquire a continuing entitlement to approximately $43,000 in monthly rentals required to be paid by Cablevision to Transit under the Brookland Garage ten-year lease and thereby to defeat the ability of the numerous creditors of Transit to receive some payment on their legitimate claims. The Security Trust Company also points out that should the Chalks attempt to claim the Brookland Garage rental payments through foreclosure or by seeking the appointment of a receiver it "would [if such actions were held proper] have access to a judicial forum where its rights and those of all interested persons could be presented and adjudicated." Objection at 4.

### MORTGAGEE CONTENTIONS UNDER THE DEED OF TRUST

■ Throughout this case, Mr. Chalk has contended that the deed of trust contained a "collateral assignment" of rents in favor of Mr. Chalk and that, *without more,* he became *immediately* entitled to the rental pay-

ments from the Brookland Garage property upon Transit's *default on its interest obligations* under the promissory notes. However, the deed of trust does not include any "assignment" of rents. As relevant, the deed of trust provides:

> "That *to secure* the prompt payment of [the] indebtedness ... the Grantor [Transit] ... does hereby grant and convey in fee simple [5] unto the Trustee [Claire Chalk] the *land and premises* lying and being in the District of Columbia, ... described as follows:
>
> SEE EXHIBIT A. "THE PROPERTY"
>
> together with all ... the estate, title, interest, and claim, either in law or equity or otherwise however, of [D.C. Transit System, Inc.], of, in, to, or out of the land and premises.
>
> In Trust to permit said *Grantor* to use and occupy the said described land and premises and *to receive the rents,* issues, and profits thereof, until default be made in the payment of any indebtedness hereby secured...." (Emphasis added).

[Exhibit A is a typewritten addendum which provides:]

### *THE PROPERTY*

"ALL THE LAND hereinafter described: . . . ·

[Title description of the Properties follows]

Together with all ... rents...."

This does not constitute an absolute assignment entitling the trustee to the rents on a mere demand without resort to formal legal procedures. That the conveyance is "to *secure* the prompt payment of [the] indebtedness" with the mortgagor having the right "to receive the rents" until default, dispositively establishes that the conveyance grants only a *security interest* in the rents, as it does in the land and property. It is even less an entitlement to "possession" of the

---

4. Security Trust Company Objection to Transit's Notice to Transfer Possession of Brookland, Sept. 1, 1993, at 2 [hereinafter Objection].

5. Chalk's Answer recognizes that the Deed of Trust is *not* a conveyance in fee simple. Answer of Claire Chalk, Trustee and O. Roy Chalk to Objections, Sept. 14, 1993, at 4 n. 4 [hereinafter Chalk's Answer].

"LAND [and] PROPERTY" which is the more immediate issue here.

### MORTGAGEE'S RIGHTS TO RECEIVE RENTS

It is a long standing rule in the District of Columbia "that where the mortgagor is permitted to remain in possession of the property, he is entitled to receive the rents even after default and even though the land, when sold, should be insufficient to pay the debt." *Totten v. Harlowe,* 90 F.2d 377, 380 (D.C.Cir.), *cert. denied,* 301 U.S. 711, 57 S.Ct. 945, 81 L.Ed. 1364 (1937); *see also Hardee v. American Sec. & Trust Co.,* 77 F.2d 382 (D.C.Cir.), *cert. denied,* 296 U.S. 595, 56 S.Ct. 110, 80 L.Ed. 421 (1935); *In re 1301 Connecticut Ave. Assocs.,* 117 B.R. 2, 7 (Bankr. D.D.C.1990) ("[T]he District of Columbia is with the majority of states which require that *a mortgagee take possession of the premises* before he may claim entitlement to the rents, even though the income may be expressly pledged as security.") (emphasis added), *aff'd,* 126 B.R. 1 (D.D.C.1991); *Hyde v. Brandler,* 118 A.2d 398 (D.C.1955).

■ These cases indicate that where the rentals are pledged merely as security, as they are here, a mortgagee is not entitled to receive the rental payments from the mortgaged property until he acts to perfect his security interest in these payments by acquiring actual possession of the mortgaged property. This might be done by acquiring constructive possession through the appointment of a receiver. *See, e.g., In re 1301 Connecticut Ave. Assocs.,* 126 B.R. 1, 3 (D.D.C.1991) ("Where parties create a security assignment . . . the clear rule of law in the District of Columbia is that the assignment [right to rentals] becomes effective only upon the lender's direct or indirect possession of the underlying mortgaged property.").

■ If the lender applies for the appointment of a receiver or the lender takes actual possession through foreclosure, affected third parties are provided with a judicial forum wherein their claims against the property may be heard. There is no precedent in the District of Columbia that supports the proposition, barring an *absolute* assignment of rents to be effective *immediately* upon default, that a mortgagee solely upon default in payment of the indebtedness may be immediately vested with possession of the property (or its rents) upon mere demand. *See Hardee,* 77 F.2d at 385 (finding that although a mortgagee had made an oral and written demands to have the rents applied in payment of taxes and interest on first trust notes in December of 1933, "the [mortgagee] took no legal steps to secure possession of the property . . . until January, 1934, when . . . the property was put to sale."); *cf. In re 1301 Connecticut Ave. Assocs.,* 117 B.R. 2, 8 (Bankr.D.D.C.1990) (holding that a notice of default was insufficient to perfect a pledge of rents.). If an extra-judicial transfer were permitted, as Mr. Chalk suggests, the rights of third parties with interests in the transferred property might be prejudiced. In this case, Transit has a number of judgment creditors whose rights to execute upon their judgments are likely to be affected by a transfer of possession to the Chalks on an insiders' transaction of one of the few, if not the only remaining asset of Transit. See discussion at pp. 1156–57, *infra.*

### MANNER OF ACQUIRING POSSESSION

■ In order to perfect a security interest in possession of property carrying rental payments, the mortgagee must acquire either actual possession of the underlying property or constructive possession such as by the appointment of a receiver.

Thus, two questions at least must be resolved before Mr. Chalk may be put in possession of the Brookland Garage property. The first question is whether Mr. Chalk has a security interest in the rents under the deed of trust. Assuming that this is the case as discussed *supra,* the second question is whether a demand for possession by a letter to the mortgagor is a sufficient legal proceeding to allow Mr. Chalk to take possession of the Brookland Garage property in order to perfect his security interest in the rental payments.

Mr. Chalk contends that such a mere demand is sufficient. He claims the description of the "property and premises" conveyed under the typed addendum to the deed of trust and the provisions conveying this property to

Claire Chalk as trustee support his contention that the deed of trust included a collateral assignment of the Brookland Garage rental payments.

However, District of Columbia law indicates under such circumstances that the mortgagee is not entitled to possession of the mortgaged property upon a mere demand therefore. In *Willis v. Eastern Trust & Banking Co.*, 169 U.S. 295, 18 S.Ct. 347, 42 L.Ed. 752 (1898), the Court held that upon default the mortgagor did not become a tenant at will of the mortgagee such that the mortgagee could bring summary process to recover possession of the property under the landlord and tenant act then in force in the District of Columbia. In so ruling, the *Willis* Court stated:

> The result is, that the plaintiff is not entitled to maintain this process, but must be left, so far as the aid of a court of justice is requisite to secure the rights conferred by the mortgage, to the appropriate remedy of ejectment, or a bill of foreclosure.

169 U.S. at 310–11, 18 S.Ct. at 353. Following this ruling the mortgagee brought suit in the Supreme Court of the District of Columbia to foreclose the mortgage, for the appointment of a receiver, and for an accounting. The Supreme Court of the District of Columbia denied all relief requested by the mortgagee except for the right to foreclose and sell the mortgaged premises. Both parties appealed.

Counsel for the mortgagee *contended* that after default and notice the mortgagee "was entitled to receive the rents and profits thereafter accruing from the mortgaged property." *Eastern Trust & Banking Co. v. American Ice Co.*, 14 App.D.C. 304, 313 (D.C.Cir.1899). Counsel further *argued:*

> If it was the legal duty of the defendants, Johnson and Willis, to remove from said property upon demand ... and they failed so to do, it is equally the obligation of a court of chancery to treat them as though they had performed what the law required of them, and to treat the rent collected by the said Johnson, or which reasonably might have been collected by him, as having been collected for the benefit of the trust imposed upon the property, and he

should be compelled to account for the same to said trustee for the purpose of paying any deficiency that may arise from the sale of the property securing the indebtedness.

14 App.D.C. at 315. In rejecting this argument, Chief Justice Alvey, writing for the Court of Appeals for the District of Columbia, relied upon the United States Supreme Court's ruling in *Willis*. He stated:

> That demand, therefore, was not a legal demand for the surrender of the premises within the power given by the mortgage of entry and possession, in order to make sale under the power. And *not being entitled to the possession under the proceeding taken, the complainant as mortgagee was not entitled to the rents of the property;* for until the mortgagor, or its assignee, *had been lawfully dispossessed,* it was entitled to receive the rents and profits of the mortgaged premises.

14 App.D.C. at 327–28 (emphasis added).

Judge Alvey also relied on *Teal v. Walker*, 111 U.S. 242, 4 S.Ct. 420, 28 L.Ed. 415 (1884) where the Supreme Court ruled that the mortgagee was not entitled to recover damages from the mortgagor for his refusal to turnover possession of the mortgaged premises *upon the mortgagee's demand.* The *Teal* Court stated:

> We believe that the rule is, without exception, that the mortgagee is not entitled to *demand* of the owner of the equity of redemption the rents and profits of the mortgaged premises until he takes actual possession.

111 U.S. at 248, 4 S.Ct. at 423 (emphasis added). The Court also ruled that despite the demand for possession "as the defendant in error took no effectual steps to gain possession of the mortgaged premises, he is not entitled to the rents and profits while they were occupied by the owner of the equity of redemption." 111 U.S. at 251, 4 S.Ct. at 425. Thus, the *Teal* Court ruled that the *mere demand* for possession did not amount to an "effectual step[ ] to gain possession of the mortgaged premises." These decisions indicate that in the District of Columbia, a mere demand for possession of the mortgaged

premises following default is not a sufficient legal step to entitle the mortgagee to take possession of the property for the purpose of collecting the rents and profits produced by the property.

Mr. Chalk's interest in the rental payments of the Brookland Garage property is at most a currently inchoate security interest, the same as is his right to the property. *See Green v. Vanston Bondholders Protective Comm. (In re American Fuel & Power Co.),* 151 F.2d 470, 481 (6th Cir.1945) ("[I]t has been declared that the entire tenor and affect of an instrument pledging rents, issues, and profits in addition to the real estate mortgaged is that such a pledge is deemed secondary security, with the lien continuing as an inchoate right which will be and must be perfected or consummated by asserting the right by some definite action.... *[U]p until the time the mortgagee has chosen to exercise his right to perfect his lien on the rents, issues, and profits, any intervening lien acquired upon them must take precedence and be held superior.*") (citation and internal quotation marks omitted) (emphasis added); *In re Sacramento Mansion, Ltd.,* 117 B.R. 592 (Bankr.D.Colo.1990) ("Where a deed of trust contains a clause that merely includes rents as a portion of the property pledged to secure a debt, only a security interest passes. Until a beneficiary obtains possession or does some other act to claim perfection, the trustor in possession may collect and retain the rents as they fall due."); *Missouri Valley Inv. Co. v. Curtis,* 12 Kan.App.2d 386, 745 P.2d 683, 685 (1987) ("We hold that a mortgage provision conveying the rents to the mortgagee is enforceable in Kansas, as to rents collected after default and before the period of redemption, if the mortgagee *takes proper legal steps* to reduce the rents to possession.") (emphasis added).

### THE "INTERMEDIATE" JURISDICTION ARGUMENT

In arguing that the mere demand for possession is adequate to entitle the Chalks to immediate possession of the Brookland Garage property, the Chalks contend with respect to mortgages that the District of Columbia is an "intermediate" jurisdiction as opposed to either a "lien" or "title" jurisdiction. Chalk's Answer at 5. Based upon this contention, the Chalks cite a *tentative draft* of the *Restatement (Third) of Property–Security* as though it is the law in the District of Columbia for the contention that "under the 'intermediate' approach, the mortgagor is deemed to have legal title until default occurs; after default, legal title passes to the mortgagee. In other words, [Chalk contends that] the mortgagee has the right to possession and to collect rents and profits [immediately] after the mortgagor defaults." *Id.*

However, the exclusive remedy for default provided by the Chalk deed of trust is a power of sale found in ¶ 7 which provides that upon default the entire indebtedness is accelerated, and the trustee is empowered by ¶ 7 to sell the land at public auction after advertising the sale according to the terms provided in the deed of trust and satisfying the requirements of D.C.Code Ann. § 45–715(b) (1989). The deed of trust and the D.C.Code thus do not vest the mortgagee with possession of the property immediately upon default and a demand therefor.

To support the proposition that "the Chalks are entitled to actual possession of the Brookland Garage upon demand therefor," Chalk's Answer at 6, the Chalks refer to *Freedman's Savings & Trust Co. v. Shepherd,* 127 U.S. 494, 503, 8 S.Ct. 1250, 1254, 32 L.Ed. 163 (1888), where the Court stated that "[e]ven if the deed had expressly pledged the [rental] income as security for the debts named, the mortgagor ... would have been entitled to the income, until, at least, possession was demanded under the deed." Based upon this dicta the Chalks contend that

> in the case at bar, since Claire Chalk, as Trustee for O. Roy Chalk, holds a security interest in the rents from the Brookland Garage property, the mortgagor Transit has defaulted in its payment obligations to the Chalks under the Deed of Trust, and since the District of Columbia is an 'intermediate' theory jurisdiction, the Chalks are entitled to actual possession of the Brookland Garage upon *demand* therefor.

Chalk's Answer at 6 (emphasis added).

The Chalks' argument on this point is unpersuasive. A tentative draft of the Restate-

ment has no binding effect upon this court particularly when it is in conflict with the ample precedent within the District of Columbia that indicates a mortgagor is entitled to retain the property and rents after default until the mortgagee has taken either actual possession or acquired constructive possession. See *supra* pp. 1149–50. One D.C. case has stated that "the District of Columbia ... is ... an 'intermediate' state (versus a 'lien' or 'title' state) which regards [the trustee on behalf of the] mortgagee as holding bare legal title without right of possession." *In re 1301 Connecticut Ave. Assocs.*, 117 B.R. 2, 7 n. 3 (Bankr.D.D.C.1990), *aff'd*, 126 B.R. 1 (D.D.C.1991). However, Judge Miller's decision in *Kosters v. Hoover*, 98 F.2d 595 (U.S.C.A. D.C.1938) holds that legal title to property held under deed of trust is in the trustee, equitable title is in debtor and neither is in the *cestui que trust*, the creditor.

The District of Columbia is sometimes characterized as an "intermediate" jurisdiction because it combines features of the more traditional "lien" and "title" jurisdictions. As mentioned above, the trustee under the deed of trust is deemed to hold legal title to the property. This is a feature of "title" jurisdictions. Nevertheless, in the District of Columbia deeds of trust are treated as mortgages. *Yasuna v. Miller*, 399 A.2d 68, 71–72 (D.C.1979) ("Deeds of trust are viewed as generally equivalent to common law mortgages, a mortgage being by definition an interest in property given as security for the payment of a debt.") (footnote omitted); *W.A.H. Church, Inc. v. Holmes*, 46 F.2d 608, 609–10 (D.C.Cir.1931) ("In *Wood v. Grayson*, 22 App.D.C. 432, 445 [ (1903) ], it was held that deeds of trust were in their nature and effect merely mortgages to secure debts, and that the mortgagor was the real owner, continued as the real owner of the property conveyed in fee, and, notwithstanding the conveyance by deed of trust, *the equity of redemption is considered to be the real and beneficial estate....*' ") (emphasis added).

■ The treatment of a deed of trust as a mere lien upon the property without the right of possession is a feature of the "lien" jurisdictions. This combination of features, legal title vested in the trustee with the deed of trust serving as a mere lien on the property without the right of possession, justifies the characterization of the District of Columbia in some respects as an "intermediate" jurisdiction. Although the Chalks may be correct in arguing that in "intermediate" jurisdictions the mortgagee is entitled to possession of the mortgaged property upon default by the mortgagor, we hold, applying District of Columbia law, that mortgagees in the District of Columbia under a deed of trust, such as is present here, in order to *obtain possession*, must take proper affirmative legal steps to acquire possession and a mere demand is not sufficient under D.C. law or the deed of trust.

What the courts are referring to when they speak of a "demand for possession" is a legal proceeding, akin to the commencement of a suit in equity "to enforce a surrender of possession to the trustee[ ]" under a mortgage. *Dow v. Memphis & L.R. R.R.*, 124 U.S. 652, 654, 8 S.Ct. 673, 674, 31 L.Ed. 565 (1888); *Sullivan v. Rosson*, 223 N.Y. 217, 119 N.E. 405, 408 (1918) (The pledgee must "assert[ ] his right and in some *legal form* endeavor[ ] to reduce the pledge to possession.") (emphasis added). *In re Banner*, 149 F. 936, 939 (S.D.N.Y.1907), stated that the pledgee must "in some *legal form* endeavor[ ] to reduce the pledge to possession. An application for a receivership, followed by due demand, is such an appropriate form." (Emphasis added). The United States District Court for the District of Columbia has expressed the reason behind the rule:

Where parties create a security assignment as they have in this case the clear rule of law in the District of Columbia is that the assignment becomes effective only upon the lender's direct or indirect possession of the underlying mortgaged property....

It would be unfair to require these tenants to pay rent to an entity that would have no responsibility for providing services or maintaining the property.

*In re 1301 Connecticut Ave. Assocs.*, 126 B.R. 1, 3 (D.D.C.1991).

In their Answer the Chalks concede that the passages quoted from the *Freedman's*

*Savings* case that they rely on for the proposition that a mere "demand" for possession is adequate to entitle the mortgagee to take possession are dicta.[6] The Bankruptcy Court for the District of Columbia has noted that

> although ... [*Freedman's Savings*] dealt with District of Columbia realty, the Court's observations were meant to demonstrate that the mortgagee had not perfected a pledge of rents, not to delineate what would suffice.

117 B.R. at 8 n. 4.

The decision that the *Freedman's Savings* Court cites for the dicta that a demand for possession may be sufficient to entitle the mortgagee to receive the rents, *Dow v. Memphis & Little Rock Railroad,* 124 U.S. 652, 8 S.Ct. 673, 31 L.Ed. 565 (1888), involved a mortgage that *specifically authorized* the trustees to take possession of the mortgaged property upon default. The *Dow* Court equated the filing of the suit with the demand for possession—"In the present case [*Dow*] a demand was made for the possession by the bringing of this suit.... The bill was not filed to foreclose the mortgage, but to enforce a surrender of possession to the trustees *in accordance with its terms.*" 124 U.S. at 654, 8 S.Ct. at 674 (emphasis added). In addition, the *Dow* Court stated that

> [t]he court below [relying on the terms of the mortgage] decided that the trustees were entitled to the possession when the suit was begun, and from the decree to that effect no appeal has been prosecuted. We must assume, therefore, that the demand was rightfully made, and ought to have been granted.

124 U.S. at 654–55, 8 S.Ct. at 674–75. Therefore, the demand for possession that the *Dow* Court held was sufficient to entitle the trustees to receive the income earned from the mortgaged property was evidenced by an unopposed contention in a suit to enforce the mortgage according to its terms. No such suit has yet been filed by Mr. Chalk and reliance on a failure to oppose a legal contention is not equivalent to a decision that the

court would have upheld the right to possession if it had been opposed.

*Galveston Railroad v. Cowdrey,* 78 U.S. (11 Wall.) 459, 20 L.Ed. 199 (1870) is the decision that *Dow* relied upon for the proposition that the mortgagor need not account to the mortgagee for income produced by the mortgaged property until a proper demand is made therefor. In *Cowdrey,* contrary to the Chalk deed of trust, the terms of the mortgage also *specifically provided* that the trustees could take possession of the mortgaged property and the income therefrom upon default by the mortgagor. In holding that the holders of railroad bonds secured by a mortgage on the railroad were not entitled to the income the railroad produced prior to the time the bondholders filed suit, the *Cowdrey* Court stated:

> In this case it does not appear that the complainants or their trustees made any demand for the tolls and income until they filed the present bill. The bill itself does not contain any allegations of such a demand. Now what is the language of the deeds of trust? They convey, it is true, with the other premises, the tolls, income, issues, and profits, whenever the company shall be in default of payment; but *a subsequent clause provides* that in case the company shall at any time for the space of three months be in default in respect to the payment of either interest or principal of said bonds when due and demanded, *on request in writing of any of the holders of the bonds, the trustees shall take possession of the railroad* and other property, and through the agency of the persons they may appoint, *shall collect and receive the tolls, incomes, and profits of the railroad and mortgaged property for the purpose of the security before declared,* and may sell the road upon giving due notice, & c. It seems to us that the latter clause defines and points out the manner in which the pledge of the tolls and income is to be practicably carried into effect. At all events until a regular demand were made for the payment of the tolls and income we do not think, *under the language of the*

---

6. Chalk's Answer at 6.

*deed,* that the defendants were bound to account therefore.

78 U.S. (11 Wall.) at 483 (emphasis added). What is missing in the Chalk deed of trust is any provision "that the trustee, on written request of the mortgagee [following default], shall take possession of the property" with authority to collect the rents and sell the property on giving due notice.

Both the *Dow* and the *Cowdrey* decisions looked to the terms of the deeds of trust to determine when the mortgagees were entitled to the income produced by the mortgaged property. In both cases, the deeds of trust *specifically provided* that the trustees could take possession upon default and both Courts held that the mortgagors were entitled to control the income until the mortgagees *filed suit to enforce the mortgages* according to their terms. Nothing in the Chalk deed of trust provides that he is entitled upon his mere demand to acquire possession of the mortgaged property following default. Nor has he filed suit to enforce his deed of trust according to its terms and D.C. law.

### THE REMEDY FOR DEFAULT PROVIDED BY THE DEED OF TRUST

Mr. Chalk's deed of trust in ¶ 7 does include a power of sale in event of default in the payment of interest or principal. This provision entitles Mr. Chalk, as the holder of the promissory note, to foreclose on the Brookland Garage property by instructing the trustee to advertise and sell the property upon Transit's default. In order to foreclose on the property through this power of sale, however, Mr. Chalk is also required to comply with D.C.Code Ann. § 45–715(b) (1989) which requires the holder of the defaulted promissory note or his agent to give written notice of the sale to the owner of the real property with a copy forwarded to the Mayor's office at least 30 days in advance of the sale date. The sale could then take place according to the length of notice and the terms of sale provided by the deed of trust and D.C. laws.

Should Mr. Chalk decide on such course of action, it is likely that he would have the burden of being "subjected to the most rigid scrutiny by the courts, and the burden is on the officers to establish their good faith by strict proof." *Pepper v. Litton,* 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939); 19 C.J.S. *Corporations* § 528 (1990).

### ADDITIONAL REASONS FOR DENYING CHALK POSSESSION AT THIS TIME

Aside from the fact that Mr. Chalk attempts to take over possession of the Brookland Garage property by unconventional means, there are additional grounds for enjoining Transit from turning over possession of the property to Mr. Chalk at this time.

First, is the fact that Mr. Chalk has subordinated his claims to the extent of $937,-215.00 to the claims of the Riders' Fund. On July 6, 1992 the Chalks subordinated their claims to the claims of the Riders' Fund in the following terms:

> O. Roy Chalk and Claire Chalk do hereby agree to subordinate to the claims of the Riders' Fund in those cases any and all claims they have for funds loaned to D.C. Transit System, Inc., in amounts totalling $937,215.00 after July 2, 1990, which loans are secured by the following Deeds of Trusts [on the Brookland Garage].[7]

Under this agreement O. Roy Chalk's present claim to "possession" of the Brookland Garage property, which claim implicitly includes the rents, is subordinated to the claims to the rents by the Riders' Fund to the extent of $937,215.00. A decision in point is *Drobnick v. Western Federal Savings & Loan Ass'n,* 479 P.2d 393 (Colo.Ct.App.1970), where the Colorado Court of Appeals held that the legal effect of an agreement by a mortgagee subordinating his security claims under a deed of trust, included the subordination of his "rights to rents and profits" even where the mortgagee had the right to receive rents and profits after default.

A second ground for denying the turnover of possession lies in the covenant that Transit

---

7. There are two deeds of trust on the Brookland Garage, one for $7,000,000.00, and one for $2,500,000.00.

entered into with the court on July 25, 1978. It provides:

D.C. Transit respectfully represents and covenants that, until such time as there has been a final judgment entered by the Court of Appeals as to net amount of the Company's liability, if any, to the farepayers under *Bebchick–II, DCC–I, DCC–II,* and until such time as the Company has paid and satisfied such judgment, the Company will make no distributions to its stockholders or sell or transfer any of its assets or properties other than for good and valuable consideration.

Response of Transit to Mr. Bebchick's Motion on Procedure, July 25, 1978, at 12. Since Mr. Chalk has no right to take possession under the deed of trust on his mere demand, an agreement to transfer possession of the Brookland Garage property at this time would be independent of any right recognized by the deed of trust and would violate the above covenant to the court unless it was supported by sufficient independent consideration. The Notice provided by Transit fails to describe any consideration for the proposed turnover.

A third ground for denying the turnover of possession exists in the court's order of April 24, 1979. This order requires Transit to provide the court and interested parties with ten days notice "of the *terms and conditions* of any proposed disposition of any properties ... having a market value in excess of $50,-000." (Emphasis added). Possession of the Brookland Garage satisfies the $50,000 requirement. The Notice filed by Transit, however, merely states "D.C. Transit ... hereby gives ten (10) days notice of its intent to turnover possession of all of the Brookland Garage property to Mr. O. Roy Chalk ... in accordance with Mr. Chalk's demand for possession." Notice of D.C. Transit's Intent to Turn Over Possession of Brookland Garage Property, Aug. 19, 1993, at 1.

A contemporaneous letter sent to Transit by Mr. Chalk's attorney, after demanding payment in full of Transit's outstanding indebtedness to Mr. Chalk under the Brookland Garage deed of trust, stated "if full

payment is not made within five (5) days of this letter, we hereby demand that D.C. Transit formally turn over actual possession of the Brookland Garage property to Mr. O. Roy Chalk on or before August 31, 1993." One of the parties has correctly pointed out that this "Notice does not conform to the required 'terms and conditions' for the transfer of the Brookland Property to Chalk. No time limits for Chalk's possession of the property·are set forth in the Notice.... Indeed, it is unclear from the Notice precisely what interest in the Brookland property Transit seeks to transfer to Chalk." [8] Nor is there· any statement of the particular deed of trust notes that are allegedly in default, if any, nor any consideration for the turnover of possession nor any statement of limitation on the extent of the possession to be turned over. Therefore, Transit's notice is deficient because it· did not set forth adequate notice of the terms and conditions of the turnover as required by this court's order of April 24, 1979. The effect of this Notice provision with respect to the "disposition" of the property may be considered in a subsequent opinion.

A further ground for denying the takeover exists in the prejudice it would cause to creditors' rights. A transfer would prejudice the rights of Transit's judgment creditors, which include Cadwalader, Wickersham & Taft, the Security Trust Company on behalf of the Riders' Fund, the FDIC, and other creditors, to attack the validity of the Deeds of Trust and to garnish the rents. There is also a serious question whether the loan and payback arrangement operated to furnish a basis for Transit to dispose of the Brookland Garage property and for Mr. Chalk to acquire possession of the property in a two-step procedure, both steps controlled by Mr. Chalk as an insider, and thus to operate as an eventual fraud on creditors. At the time when major portions of the loan and payback deeds of trust were executed the Chalks were well aware that Transit was facing insolvency from upcoming mammoth judgments in the pending fare litigation, its inability to pay $12,500,000.00 on the Car Barn

---

**8.** Objection of Cadwalader, Wickersham & Taft to the Proposed Transfer of the Brookland Garage by D.C. Transit System, Inc., Sept. 1, 1993, at 3.

mortgage and other financial demands. In fact the validity of the deed of trust on the Brookland Garage property is recognized as being in serious question by Mr. Chalk's contentions in this case that his insider status as chief executive officer and chairman of D.C. Transit placed him in the untenable position in the loan and payback transactions of having "constructive possession" of the Brookland Garage property. Letter of August 19, 1993 demanding possession of Brookland Garage property accompanying Notice of Intent to Turn Over Possession of Brookland Garage Property.

■ Where the rentals are pledged as security and the mortgagee has not perfected his security interest in the rentals, the rental payments are subject to attachment by Transit's judgment creditors, and as far as the current rental payments are concerned, the attaching creditors have priority over the mortgagee until a default occurs and he acquires possession such as by a foreclosure or the appointment of a receiver. *See Ivor B. Clark Co. v. Hogan,* 296 F.Supp. 398, 405 (S.D.N.Y.1968); *In re Stone Ridge Assocs., Ltd. Partnership,* 142 B.R. 967, 970–71 (Bankr.D.Kan.1992) (applying Kansas law).

When the mortgagee does perfect his security interest through possession, however, the mortgagee has priority over the subsequent judgment creditors with respect to the rental payments. Therefore, before possession is transferred to Mr. Chalk, an act that would prevent Transit's judgment creditors from reaching future rental payments of the Brookland Garage property to satisfy their judgments, Mr. Chalk is required to obtain possession through legal means.

CONCLUSION

The deed of trust does not provide for a turnover of the property at this time. There is no precedent in the District of Columbia that would support turning over possession to a mortgagee with a security interest in the rents of the property following a mere demand for possession. It is therefore the decision of the Court for reasons hereinabove set forth, and upon all the files and records of this case, that Transit is hereby enjoined until further order of the Court from transferring possession of the Brookland Garage property to O. Roy Chalk. Transit is also enjoined from turning over possession of the Brookland Garage property until the Riders' Fund has recovered a total of $937,215.00, same being the amount by which Mr. Chalk subordinated his claims to those of the Riders' Fund.

*Judgment accordingly.*